RING, *Plaintiff in Error*, v. THE MISSOURI PACIFIC RAILWAY COMPANY.

### Division Two, November 15, 1892.

1. **Practice in Supreme Court:** WRIT OF ERROR: STATUTE. Revised Statutes, 1889, section 2253, providing for the hearing of cases in the supreme court on a certified copy of the judgment and order of appeal and abstract of the record in lieu of a full transcript, apply to a case taken to the supreme court by writ of error although in such case there is no order granting an appeal.

2. **Negligence:** RAILROAD: TRACK REPAIRER: APPROACHING TRAIN. Where a workman engaged in track repairing is standing away from the track and out of danger from any approaching train, no negligence will be imputed to the engineer in not stopping the train to avoid striking him.

3. ——: ——: ——: ——. Nor was it, under the facts of this case, the duty of the foreman who was present at the time, to warn the workman of the approaching train.

4. **Negligence:** MASTER AND SERVANT: WARNING OF DANGER. A master is not required to keep special watch over his employe and warn him of common dangers to which he may be subjected in the performance of his ordinary duties.

*Error to Johnson Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

AFFIRMED.

*S. P. Sparks* for plaintiff in error.

(1) The court erred in refusing to submit the question to the jury whether Kane, the foreman of

defendant, was negligent in not notifying deceased, who was working in a dangerous place under his immediate personal supervision, of the rapid approach of the train, by giving the fifth instruction of defendant and refusing the sixth, seventh and eighth of plaintiff's instructions. *Miller v. Railroad*, S. W. Rep.; *Gessley v. Railroad*, 32 Mo. App. 413; *Brickson v. Railroad*, 43 N. W. Rep. 332; *Stevenson v. Steamship Co.*, 1 Jones & S. (33 N. Y. Sup. Ct.) 275; *Gerlach v. Endelmeyer*, 15 Jones & S. (47 N. Y. Sup. Ct.) 292; *Coyle v. Pierrepont*, 37 Hun, 379; *Carrol v. Railroad*, 14 Minn. 57; Gel. 42; *Mark v. Railroad*, 30 Minn. 493; 32 Minn. 208; *Anderson v. Mill Co.*, 44 N. W. Rep. 315; *Woodley v. Railroad*, 5 H. & N. 143; 1 Thompson on Negligence, 461; *Railroad v. Goebel*, 7 W. Rep. (Ill.) 591. The deceased was lawfully upon or near the track engaged in labor, and his master owed him the duty of active vigilance to protect him from danger, and he had the right to become engrossed by his labor to the extent of becoming oblivious to the approach of trains, relying upon the duty imposed by law to warn him of the approach of trains. 1 Thompson on Negligence, 461; *Railroad v. Goebel*, 7 W. Rep. (Ill.) 691; *Miller v. Railroad, supra; Gessley v. Railroad*, 32 Mo. App. 413; *Railroad v. Fox*, 31 Kan. 587. The law presumes deceased was in the exercise of due care. *Flynn v. Railroad*, 78 Mo. 195; *Buesching v. Co.*, 73 Mo. 219; *O'Connor v. Railroad*, 94 Mo. 229; *Stepp v. Railroad*, 94 Mo. 157. (2) Kane, the foreman of the section gang, was as to deceased a vice-principal, and his negligence was the negligence of their common master, and the court erred in refusing to submit that question to the jury by refusing the sixth instruction of the plaintiff. *Miller v. Railroad*, S. W. Rep. (3) The first instruction given at the instance of defendant was viciously erroneous in telling the jury that the sounding of the whistle one hundred

and fifty yards from deceased at the railroad crossing would justify the engineer in presuming the deceased heard and would heed the signal, notwithstanding he saw the deceased was in a dangerous situation, and their verdict should be for defendant. *Chouquette v. Barada,* 28 Mo. 491; *Fine v. Schools,* 39 Mo. 59; *Rose v. Spies,* 44 Mo. 20; *Jones v. Jones,* 57 Mo. 138. The rule is that, if after sounding the alarm, the person on the track does not heed it, then the presumption ceases, and the engineer must use every appliance he can command to avoid the danger. *Ball v. Railroad,* 72 Mo. 50; *Rine v. Railroad,* 88 Mo. 392.

*R. T. Railey* for defendant in error.

(1) The plaintiff in error should have sent up a complete transcript of the record. Revised Statutes, 1889, sec. 2253; *Macklin v. Allenberg,* 100 Mo. 345; McGary's Pleading, sec. 255. It was the duty of plaintiff in error to see that a proper transcript was filed. *Redway v. Chapman,* 48 Mo. 218; *Ins. Co. v. Harrison,* 21 Mo. App. 306. (2) Deceased had the means and opportunity of knowing that the train was approaching. Knowledge on his part will, therefore, be conclusively presumed. It has been wisely said that "the means of knowing by ordinary care is evidence of knowledge." *Jackson v. Railroad,* 104 Mo. 459; *Mason v. Black,* 87 Mo. 342; *Hulett v. Railroad,* 67 Mo. 240; *Rhodes v. Outcalt,* 48 Mo. 370; *Spreck v. Riggin,* 40 Mo. 405; *Muldowney v. Railroad,* 39 Iowa, 620. (3) If plaintiff's theory of the law be correct, then the master becomes an insurer against the ordinary risks that are just as patent and open to the servant as to the master. (4) The engineer was not bound to stop the train unless deceased occupied a place of peril. (5) If deceased was injured at all by the passing train, it was by reason of his own carelessness

and heedlessness directly contributing to such injury. *Smotherman v. Railroad,* 29 Mo. App. 266; *Moody v. Railroad,* 68 Mo. 471; *Jackson v. Railroad,* 104 Mo. 448; *Gurley v. Railroad,* 104 Mo. 211. (6) Again, if deceased was injured at all by defendant's train, it was by reason of the risk incident to his ordinary employment. *Houston v. Railroad,* 14 S. W. Rep. 242; *Tuttle v. Railroad,* 122 U. S. 189; *Schaub v. Railroad,* 106 Mich. 74; *Jackson v. Railroad,* 104 Mo. 457; *Roddy v. Railroad,* 104 Mo. 250.

MACFARLANE, J.—This is a suit by plaintiff to recover damages for the death of her husband, Orloff Ring, by the alleged negligence of the defendant:

The petition charges that deceased was in the employ of the defendant as a track or section hand, under a foreman, Henry Kane; that between seven and eight o'clock, on the morning of December 31, 1887, he was put to work, with other hands, on the track of defendant's road near the limits of the city of Pleasant Hill, under the direction of said foreman; and while so engaged, and by reason of the negligence of said foreman and the engineer of a passenger train running on the road, he was struck by the locomotive of said train, and from injuries thereby received he subsequently died.

The specific acts of negligence charged were that on this morning the train was over an hour late, which was unknown to both deceased and the foreman, and passed the point at which they were working at the rate of thirty-five miles per hour; "that the engineer in charge of said train saw, or by the exercise of reasonable care could have seen, said Ring's dangerous position while at work, at the side of defendant's track, in ample time to have stopped the train and avoided the injury to said Ring; but neglected to stop said

train or ring the bell, or blow the steam whistle attached thereto, and thus notify deceased of the approach of said train and of the danger to which he was exposed. And the said section foreman saw, or by the exercise of reasonable care could have seen, said train in ample time to have warned said deceased of the danger to which he was exposed, which said foreman saw and knew, or might have seen and known by the exercise of reasonable care, and might thereby have enabled said deceased to avoid the danger to which he was exposed, but neglected to do so.''

The answer was a general denial, and a plea of contributory negligence.

The trial, by a jury, resulted in a verdict and judgment for defendant, and the case was brought to this court for review by writ of error.

There was little, if any, conflict in the evidence upon any material question. There were only two trackmen besides deceased working at the place of the accident; they were both witnesses at the trial, and the engineer and fireman were also witnesses. These four were the only persons in a condition to have seen the accident; none of them saw it, or could account for it.

The road, at the place of the accident, runs nearly east toward Pleasant Hill. The foreman and three laborers were at work on the track, commencing that morning at about seven o'clock. The passenger train from the west was due between six and seven o'clock, but on this morning it was about an hour late. The foreman, deceased and another laborer named Quick were working together, shoveling gravel. From fifty to one hundred and fifty yards west of them was a whistling post, which was half a mile from defendant's yards in Pleasant Hill, and at which trains coming in were required to signal the yardmen by a whistle. From the whistling post to where the men were at work

the track was straight and the view unobstructed. All three men were on the west side of the track; the foreman in the middle, deceased seven or eight feet north of him, and the man Quick the same distance south. The whistle signal was given at the proper place, and the train went by these men at the rate of twenty or twenty-five miles per hour. When deceased was last seen, "he was standing out from the railroad bed five or six feet, when the train came along," as the foreman testified, and "about three feet from the end of the ties," as Quick testified. Neither of them noticed him as the train passed, but after it had gone by "about one hundred feet" he was found lying six or seven feet from the track with a hole, in which the finger could be inserted, in the right side of the back part of the head, the skull being broken in. From this wound he died in a few days.

These two witnesses were called by the plaintiff, and these facts were shown by evidence introduced by her.

The engineer and the fireman of the engine were called by defendant. They testified that the whistle of the engine was sounded, and the train was stopped at the crossing of the Fort Scott road, a quarter of a mile away, and that the whistle was sounded again at the whistling post. They saw the men standing on the side of the road when the engine passed, none of them being near enough to have been struck by the engine. No other signals were given. They did not know that anyone was struck. The rate of speed of the train was not checked. No effort was made to stop the train. The foreman did not warn deceased of the approach of the train.

The evidence does not show that deceased saw the train or knew of its approach, unless the fact could be

VOL. 112—15

inferred from other evidence. The train could have been stopped after the engineer got within view of the deceased. It was not the custom to stop or check up trains on approaching trackmen at work. Deceased had been employed as a trackman on defendant's road nine or ten years. Trains passed over the road frequently during the day. There was no rule shown which required the foreman to notify workmen of the approach of trains.

The case was submitted to the jury upon a series of instructions, the correctness of some of which are questioned, but the view we take of the case makes it unnecessary to consider them in detail.

I. This case was certified to this court upon a writ of error from the circuit court of Johnson county. The writ calls for the record and proceedings in the case. The only record returned in obedience to the writ is a certified copy of the record entry of the judgment which was rendered in favor of the defendant upon the verdict of the jury. No order granting an appeal was returned. Plaintiff in error filed in this court what purports to be printed abstracts of the entire record of said cause, as provided by section 2253, Revised Statutes, and asks that her cause be reviewed upon such abstracts. It is insisted by defendant in error that there is no record before the court for its review; and for that reason the judgment should be affirmed.

It is evident that plaintiff in error has undertaken to obtain a review of the proceedings of the circuit court, as is provided by said section. That section provides that the appellant or plaintiff in error, in lieu of filing a complete transcript of the record in the appellate court, may file "a certified copy of the record entry of the judgment, order or decree appealed from in said cause, * * * together with the order granting

the appeal, and shall thereafter  *   *   *   file printed
abstracts of the entire record   *   *   *   in the office
of the clerk of such appellate court,   *   *   *   and
deliver a copy of said printed abstract to the respondent
or defendant in error, and the respondent or defendant
in error may  *   *   *   file additional abstracts.  *   *   *
If the abstract filed by appellant or plaintiff in error be
sufficient and correct, a reasonable charge therefor shall
be taxed against the respondent or defendant in
error," etc.

Defendant insists that as this statute requires a
certified copy of the judgment appealed from and a
copy of the order granting the appeal, to be filed in the
appellate court, the provisions cannot apply to writs of
error in proceedings in which the judgment was not
appealed from, and in which there was no "order
granting an appeal."

We are of the opinion, taking the whole section
together, that the manifest intention of the legislature
was to apply its provision to both appeals and writs of
error. We think the reference to the "judgment
appealed from" was only intended to distinguish the
particular judgment, of which complaint is made, and
a review of which is desired, and has no other signifi-
cance. The requirement, that a copy of the order grant-
ing the appeal should be filed, was only intended to be
applicable to judgments from which an appeal has been
taken. An order granting an appeal is necessary to
give the appellate court jurisdiction of an appeal, and
the necessity of filing a copy of said order is apparent.
No order of the kind is necessary to give the
appellate court jurisdiction by writ of error, the
writ giving the jurisdiction. The statute is cer-
tainly somewhat ambiguous, but the reference through-
out to "plaintiff in error" and "defendant in error,"
whenever appellant and respondent are referred to, is

quite convincing that the benefits of the section were intended for both classes. Construing the statute to mean that the copy of an order, granting an appeal, should be filed in every case in order to give the parties its benefit, would show an unreasonable preference to parties to an appeal over those to a writ of error, and would also render much of the language of the act meaningless. We think the provisions of the act apply to writs of error.

II. The questions of the duty of the employe engaged in running a train towards the one engaged in repairing the track; the risk of injury from passing trains which the track laborer assumes when he accepts employment; and the duty of the section foreman to the trackmen under him to look out for trains and warn them of danger, have all been pressed upon our consideration in this case. These are all important questions, and their solution in any particular case depends largely upon the rules established by the master for the government and direction of its employes. It is difficult to generalize in such a way as to meet particular cases, and it is not best to attempt to do so.

III. As to the negligence of the engineer, the petition charges that he saw or could have seen Ring's dangerous position in time to have stopped the train or warned him of danger, but neglected to do either.

There is no doubt that, if Ring had been in a dangerous situation on or near the track, or had apparently not heard or wholly disregarded the usual signal warning, it would have been the duty of the engineer, by the use of all appropriate means at his command, to have avoided striking him. That the deceased was at same time in a dangerous situation, is attested by the fatal wound on the head. The evidence, however, introduced by plaintiff which was corroborated by both the engineer and fireman, shows without contradiction

that as the train came up deceased was standing from four to six feet from the track, and entirely out of harm's way.   That he was not on the track when struck, is evident from the fact that there were no bruises found except on the head.   If he was struck by the train, it must have been, from the place and nature of the wound, by some projection from the side of the engine or cars.   There is no evidence whatever that deceased was in a situation of peril while he remained in view of the engineer.   The charge of negligence of the engineer was not sustained by a particle of evidence.   Moreover, this question was submitted to the jury in an instruction, and the verdict exonerated the engineer of negligence.

IV.   It is insisted in the next place that the foreman of deceased was negligent in not warning him of the danger to which he was exposed.   Such is the charge in the petition.   Now what is the proof of this allegation?   If defendant had promulgated rules directing the duties of foremen, in respect to warning those under them, they were not introduced in evidence.   It was shown that Ring had worked as a section hand on that road nine or ten years, and that trains frequently passed over the road every hour in the day.   The foreman testified:   "It is not my duty to notify the section hands that a train  or trains are  behind time; nor do I know if it is my duty to warn the section hands that a train is coming, even if I see it."   This is every word of testimony on the subject.   There being no rule, we should take a practical view of the foreman's duty in such cases.   The train gave a signal one hundred and fifty yards away.   This was heard by the foreman and Quick.   They stepped back from four to six feet from the track, where they stood in entire safety until after the train passed.   They both say that deceased was standing about the same distance from

the track as the train approached. Under these circumstances, we are unable to see that the most solicitous and prudent of foremen could have found any warning necessary, either under the rules of law or humanity.

This case is clearly distinguishable from that class of cases in which the person injured was ordered into a place of impending danger by the foreman, of which *Stephens v. Railroad*, 96 Mo. 207, is a type; and other cases in which the servant is required to do work in a dangerous situation in which he is unable to know of impending danger, or protect himself against it, as in *Moore v. Railroad*, 85 Mo. 588, and *Dayharsh v. Railroad*, 103 Mo. 575. In the former class of cases the master will be held responsible for the negligent order of the foreman; and in the latter for a neglect to give a timely warning of the danger.

In this case the laborers, including the foreman, were all alike "shoveling gravel," with a long stretch of straight and unobstructed track from which danger, though not impending, might be expected at any time. The situation was not one of unusual danger, nor one not ordinarily incident to the work they were employed to perform. The engine sounded a signal within easy hearing distance, and within plain view of these men; deceased was not at that time on the track, or in a place of danger; he had worked on the road nine or ten years, with trains passing frequently during every day, and was familiar with all the dangers; no rules were shown which absolved the laborers from watching for themselves for passing trains, or that imposed upon the foreman the duty of watching and warning them of the ordinary danger from passing trains.

Under these circumstances a rule that would impose upon the master the duty of watching each individual workman, and warning him of the passing

of every train, and of keeping him out of danger, would be an abrogation of the well-recognized and necessary rule, that the servant, when engaged in his master's service, assumes all the risks ordinarily incident to the discharge of the duties he undertakes to perform; and would make the master an insurer of the safety of his servants. It would be most unreasonable to require the master to keep a special watch over every employe, and warn him of every common danger to which he might be subjected in the performance of his ordinary duties, and the law does not require it. Shearman & Redfield on Negligence, sec. 185; *Jackson v. Railroad*, 104 Mo. 456; *Thomas v. Railroad*, not reported.

The judgment is for the right party, and is affirmed.