EMMA MILLER, Respondent, v. MICHAEL WALSH, Appellant.

Kansas City Court of Appeals, June 13, 1910.

MASTER AND SERVANT: Negligence: Knowledge of Danger: Contributory negligence.   M was an experienced laborer in digging trenches for sewers, and was working for W, with two others, at the bottom of a trench fourteen feet deep and two feet, three inches wide, in putting up braces to prevent the sides from falling in.   The cross-pieces used to cross the trench and hold each upright brace in position, were of proper length, but by sudden swelling of the sides of the trench they became too long and M threw the one he was trying to put in, up to the surface, saying it was too long.   The man who cut these

cross pieces, realizing that something was wrong, called out to M to look out and stand back to a place of safety while he shortened the cross-piece. While doing so, the trench caved in and killed M. *Held*, that W was not guilty of negligence in not warning M of the character of the ground and in the cross pieces becoming too long, and that M was guilty of negligence in not heeding the warning to get back into a place of safety.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

REVERSED.

*Lathrop, Morrow, Fox & Moore* for appellant.

The court should have peremptorily directed a verdict in defendant's favor because: (a) There is no evidence of negligence creating liability on the part of defendant. Administrator v. Lime & Cement Co., 113 Mo. App. 330; Armour v. Hahn, 111 U. S. 313; Finlayson v. Mining & Milling Co., 67 Fed. 507; Bridge Co. v. Seeds, 114 Fed. 605. (b) Deceased assumed the risk of the caving in of the sides of the trench which caused his death. Knorpp v. Wagner, 195 Mo. 637; Livengood v. Lead & Zinc Co., 179 Mo. 229.

*James G. Smart* and *Charles R. Pence* for respondent.

ELLISON, J.—Plaintiff's action is to recover damages for the death of her husband, which she charges was occasioned by the negligence of defendant. She prevailed in the trial court.

Defendant was engaged in putting in a sewer in Kansas City, and had several men in his employ, among others the deceased. The ditch for the sewer was dug fourteen feet deep and was exactly two feet and three inches wide. It was dug by a machine, which accounts for its uniform width. It was being dug from south to north; that is, the machine, which

was run by steam, was placed north of the point of beginning, so that what was called the diggers would extend south over the point of beginning. The digging was begun and as the ditch would be cut deep enough the machine would be moved to the north. This mode of operation had the effect to make the ditch slope from the finished depth up to the surface; the degree of slope is not stated. The depth of the ditch, as well as the character of the earth, made it necessary to brace the sides to prevent falling in. The bracing was by means of boards two inches thick, ten inches wide and fourteen or fifteen feet long, set, or stood, upright against each side of the ditch opposite one another, and cross-pieces of scantling placed so as to hold them against each bank. The ditch being of uniform width, these cross-pieces were cut a uniform length, so as to properly reach from one upright board to the other.

Two men were at the bottom engaged in doing the bracing, boards and cross-pieces being handed down to them for that purpose. The evidence does not make certain the length of space between the machine and the first brace, that is to say, the length of excavation unbraced; nor is it made clear how much of the unbraced space was at the bottom of the ditch, and how much of it was on the slope. Plaintiff states that there was evidence tending to show that the unbraced portion was between ten and fourteen feet at the bottom of the ditch. Defendant says the evidence tended to show only five or six feet at that place.

Be that as it may, defendant concluded to put a third man in the ditch to assist in bracing, and he went to a nearby place where he had other men employed, at other sewer work, and asked the foreman there to send over a man for that purpose. The foreman sent the deceased. He came and immediately descended to the bottom of the ditch and begun work by undertaking to put in a cross-piece between the upright boards. He found it too long and threw it up to the surface, saying

they must be shorter. The man who was engaged in cutting the cross-pieces judged by that that the sides must be settling inwardly and realizing the danger went up to the edge of the excavation and called to them "to be careful and stand back, that the ground was soft." At another place in his testimony he said that he called "Boys, stand back, the ground is soft." In answer to the question whether deceased heard him give that warning, he answered: "Well, I supposed he did because I hallooed it out to them. He minded me at the time and got back until I went to saw a brace; that is, he stepped back like he listened to what I was saying about it. I don't know that he heard it. I am satisfied that he did, though, from the movement he made, . . . He got back next to the brace he had already set, that is the reason why I thought he heard what I said." This man then went a short distance, perhaps forty feet, to shorten the brace, and returned immediately, and as he got to the edge of the cut the "cave in" occurred, killing deceased and one of the others. The earth gave way towards the last brace that was set, but not up to it, so that if deceased had remained there after the warning, he would not have been hurt.

Three grounds of negligence are charged in the petition: first, that defendant failed to warn deceased of the dangerous condition of the earth and sides of the trench; second, in furnishing deceased with cross-pieces which were too long; and, third, in permitting the machine to dig the trench too great a distance (fourteen feet) ahead of the bracing. There was a fourth ground but it is included in those stated. We cannot bring ourselves to the conclusion that either of the first two grounds was supported by evidence.

As to the first, no reasonable man could have supposed it necessary to notify deceased as to the danger. He was shown to have been an old and experienced employee in sewer laying. He saw the depth of the trench

and how narrow it was. His work was to make it safe. The danger of the sides falling in was what he was directed to avoid. [Henson v. Armour, 113 Mo. App. 618; Bradley v. Tea & Coffee Co., 213 Mo. 320; Meehan v. Ry. Co., 114 Mo. App. 396.]

The second ground is even more untenable. The evidence shows the length of the cross-pieces had been measured and they were sawed accordingly. But by the sudden swelling inwardly of the sides of the trench, they, of course, became too long, and *immediately* upon notice of that fact, the man whose business it was, began to shorten them and in the meantime warned deceased to look out—to stand back.

The record leaves the third ground in a very uncertain state. As already said, the distance of unbraced trench is left indefinite. If there was a space of twelve or fourteen feet at the bottom of the trench, unbraced, it would seem to be clear that, ordinarily, it would justify submitting a question of negligence, either on the ground that the ditching was permitted to get too far ahead, or the bracing too far behind.

But we need not go into that. For we are bound to notice that the uncontradicted evidence of plaintiff's own witnesses, is that the man who cut the cross-pieces warned deceased and saw him move back into a place of safety. We are not unmindful of plaintiff's suggestion that there is no evidence that deceased heard him. But above we have set out the evidence on this head, and are bound to say he did hear him. He was only fourteen feet away, the machine was not running and presumably there was no noise to drown his voice. He hallooed out and deceased immediately responded by stepping back within the protection of the last braces. To say that he did not hear the warning would be to abandon every reasonable probability and adopt the merest conjectural possibility.

We feel compelled to reverse the judgment. All concur.