JOSEPH MIHELICH, Respondent, v. DELIA MIGNERY, Appellant.

**Kansas City Court of Appeals, April 3, 1911.**

1. **MASTER AND SERVANT: Quarry: Blast: Warning.** If a warning is given before discharging a blast in a rock quarry, in a voice loud enough to be heard, and admitted by all of the workmen but one, some of them several hundred feet away, and that one standing near-by, within a few feet of the person calling out the warning, and being of good hearing, he will be presumed to have heard it.

2. ————: ————: ————: ————: **Safe Place: Duty.** It is the duty of the master in operating a rock quarry by blasting, in order to keep the place safe for the workmen, to give warning that a blast is to be fired, in time for them to get to a place of reasonable safety; and this duty is performed in calling out to them in a loud voice, in their presence and hearing.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman,* Judge.

REVERSED.

*Wm. E. Stringfellow* for appellant.

(1) The only duty resting on the master in this case was to give timely warning to plaintiff of the shot to be fired. There are a limited number of cases reported in which a quarry employee was injured by rock discharged by a blast. We have been unable to find any reported case in which the employer was held to any other duty than merely to warn the employees of the shot about to be fired in time enough to enable them to seek a position of safety. An examination of the following blasting cases, in which the negligence alleged was failure to warn of an approaching shot, will show that to be the limit of the masters duty. Zeigenmeyer v. Lime & Cement Co., 113 Mo. App. 330; Belleville Stone Co. v. Mooney, 39 Atl. 764; Hendrickson v. U. S. Gypsum Co., 105 N. W. 503; Grimaldi v. Lane, 59 N. E. 451, 177 Mass. 565; Jacobson v. Hobart Iron Co., 114 N. W.

951; McMahon v. Bangs, 62 Atl. 1102. (2) Plaintiff is held as a matter of law to have heard the warnings given. Miller v. Walsh, 145 Mo. App. 135. (3) Plaintiff's petition claims and plaintiff's first instruction throws a higher duty on defendant than required by law. But the requirements of that instruction, while erroneous, were fully complied with in this case. No negligence having been shown, the injury must be charged to one of the risks of the business assumed by the plaintiff. We understand that assumed risk is not a defense in this state if the master in negligent. But in the absence of the master's negligence, the doctrine is in full force. The master is not an insurer. Dickinson v. Jenkins, 144 Mo. App. 136; Beebe v. St. Louis Transit Co., 206 Mo. 419; Knorpp v. Wagner, 195 Mo. 637. Even in extra hazardous employments, the law does not impose upon the master the duty to provide a safe place, but only that of employing reasonable care to provide one which is reasonably safe. Spencer v. Bruner, 126 Mo. App. 94; Bloomfield v. Worster Con. Co., 118 Mo. App. 254; 26 Cyc. 1112. A servant entering an extra hazardous employment assumes—in the absence of the master's negligence —not only the ordinary risks of his employment, but also the risks of the extra hazards, the dangers of which he knew and understood. Zeigenmeyer v. Lime & Cement Co., 113 Mo. App. 330; Knight v. Donnelly Bros., 131 Mo. 160; Carter v. Baldwin, 107 Mo. 228; Watson v. Coal Co., 52 Mo. App. 366. (4) An employer is not required to furnish a place to work safe from dangers which are temporary and transitory only, and arise from the nature of the work. The employee assumes the risk of such dangers. Zeigenmeyer v. Lime & Cement Co., 113 Mo. App. 330; Meehan v. Railroad, 114 Mo. App. 404. An employee of a quarry, having been warned of an approaching explosion, cannot recover if struck by the falling stone, as such falling stone was an incident of the business, of which he assumed the risk.

Zeigenmeyer v. Goetz Lime & Cement Co., 113 Mo. App. 330. (5) It is the duty of an employer to guard against probable, not possible dangers. Lawless v. Laclede Gas Light Co., 72 Mo. App. 683. Plaintiff was conclusively guilty of such negligence as to bar a recovery. Where a workman voluntarily places himself in a dangerous place where his employer does not anticipate or require his presence, the injuries received are the result of his own lack of common prudence. Evans v. Railroad, 178 Mo. 508.

*C. W. Meyer* for respondent.

ELLISON, J.—Plaintiff was an employee of defendant as laborer in her rock quarry near St. Joseph. He was severely and permanently injured by a blast which threw a heavy rock, upon him, and this action is to recover damages on the ground of negligence charged against defendant's servants in charge of the operation of the quarry. He recovered judgment in the trial court.

Plaintiff was an experienced workman at rock quarries and had worked at this quarry for seven years. This is an important fact as it serves as a guide to a proper interpretation of much of the evidence. The quarry may, in a general way, be said to be located in a hill side near to a public and much travelled road. The ledge in which holes were drilled and blasts set off, was between ten and twelve feet high. Below was a comparatively level or free space. Blasting was done by drilling holes a few feet apart on the ledge of rock, inserting the explosive powder or dynamite and attaching electric wire which ran away to a safe distance to a battery, where the exploder would set it off. Before a blast was made warning was called out and time given for every one, including teams, to get away. Then the exploder would stand at his place and, as a precaution, call out "fire" in a loud voice and wait three or four minutes before setting off the electric spark.

The important and controlling factors in the case are either conceded or else established by undisputed evidence, and we, therefore, need not refer to much of the detail which has been gone over both in the oral and printed argument. Plaintiff was right at the scene of the explosion before and up to its occurrence. He assisted a "straw boss" in finishing drilling the holes and in removing a hand drill. He stated that he knew the explosion was ready to be fired, and he necessarily saw the men and teams getting off to places of safety, but he said he did not know "what time they were was going to shoot," and that the boss always notified the men before shooting. This notice, he said, was by "hollering out." He stated more than once that he did not hear any notice given. But that there was notice given is not to be doubted. It was testified to by practically all the others at the quarry and the important fact is that *all* went to places of safety excepting the plaintiff. That it was heard by the plaintiff cannot be doubted; notwithstanding the evidence did not show that any one saw him do anything in response to the notice, as was the case in Miller v. Walsh, 145 Mo. App. 131, and Prash v. Ry. Co., 151 Mo. App. 410.

We need not go beyond a consideration of the evidence of plaintiff himself and that of his witness Stark to demonstrate that no case was made. The most liberal inference which could be allowed in plaintiff's favor from his own testimony, is that after he helped move the hand drill from the ledge, he returned down to the level, only a few feet away, and proceeded to break rock, presumably until he would be notified to quit and seek a safe place. If that be conceded, the indisputable fact remains, as established by his witness, that a warning to get away was given in a voice which could be heard by persons ten times further away than he was. In addition, this witness testified that he was at one part of the roadway while the foreman, Walker, was further along; that the latter signalled to him that he had every

one stopped on the roadway, and that he then signalled to Thoma, the "exploder," whom he could see at the battery, and that the latter called out "fire," which could be heard several hundred feet, and then waited three minutes before causing the explosion. But more than that, this witness stated that after he had started away from the quarry he looked back and saw a little black dog, which stayed about there and seemed to be a pet of the men, run into the quarry, and, not wanting him to be killed, he went back and called him away. In doing this he neither saw plaintiff nor heard him at work.

Plaintiff was found with the rock on him, not far from the explosion and about thirty feet away from his tools, which latter fact would indicate that he was not at his work. He was not noticed by the others as they were leaving for places of safety, and there are but two ways to acount for his being in such proximity to the place of explosion when it was fired. One is that he had started off in obedience to the warning and returned for something; or that he had, for some reason, in the circumstances of such a situation negligently, become so abstracted or thoughtless as not to observe others leaving and not to be conscious of hearing the notice to get away; either of which conditions would prevent his recovery. A warning that an explosion was about to be made was the practice of defendant and her duty as well, in preserving a safe place for the quarrymen to work; and, as we have already stated, it was undoubtedly performed in this instance. [Mooney v. Belleville Stone Co. (N. J.), 39 Atl. 764; Jacobson v. Hobart Iron Co., 103 Minn. 319.]

There is this further consideration: The petition, when read in connection with a patent fact shown by the face of the record, leaves plaintiff without legal standing. It is alleged that he did not understand the English language "except to a very small degree," and that "the foreman knew, or should have known, that he would likely fail to understand or comprehend any

orders or directions spoken or given to him in the English language," and that defendant "negligently failed to give him any *sufficient notice* or warning *under* the *circumstances* then existing." (Italics ours.) This, in effect, is a confession that a proper warning was given which reached plaintiff and all the others, but by reason of the plaintiff's ignorance of the language and the conditions of his work, he did not understand. There is no merit in this for the reason that it is not borne out by the fact. Plaintiff stated he was a "crotian," but his testimony shows he understood the English language so as, for the most part, to perfectly understand the examination and cross-examination given him by the attorneys in the case. Besides, it is not disputed that he worked for years under English speaking foremen whose orders and directions were given in that language. He was a good workman, of long experience, and must have understood as well as any others in the same business. It is easily to be inferred that he was not a sociable man, but that does not signify ignorance. That he was provident and watchful in some respects is evidenced by the fact that he had about seven hundred dollars in money when injured.

We are satisfied the demurrer to the evidence should have been sustained, and the judgment will accordingly be reversed. All concur.