**Arch LOGSDON, Plaintiff-Appellant,**

v.

**Leonard W. DUNCAN, Defendant-Appellant,
William Gover, Defendant-Respondent.**

No. 44989.

Supreme Court of Missouri.

Division No. 2.

Sept. 10, 1956.

Motion for Rehearing or for Transfer to
Court En Banc Denied
Oct. 8, 1956.

John E. Honsinger, Kansas City, for appellant.

Richard H. Beeson, David P. Dabbs, Dean F. Arnold, Kansas City, for Leonard W. Duncan and William Gover.

BARRETT, Commissioner.

Arch Logsdon instituted this action to recover damages for personal injuries against Leonard W. Duncan and William Gover. The trial court directed a verdict in favor of Gover and the jury returned a verdict against Duncan in the sum of $42,000. The trial court overruled Duncan's motions for judgment but sustained his motion for a new trial upon the specific assignment that he had been unduly prejudiced by the failure of a juror on voir dire examination to make full disclosure concerning his wife's damage suit then pending at Independence. The trial court overruled the plaintiff's motion to set aside the order as well as his motion for a new trial as to Gover. The plaintiff, Logsdon, appeals from the order granting a new trial and urges, in addition, that the court erred in directing a verdict in favor of Gover. Duncan has also appealed and insists that his motions for judgment should have been sustained because Logsdon's evidence was not sufficient to establish negligence and a cause of action against him. He also urges that the verdict was excessive and that the court erred in giving a certain instruction. Despite the various motions and assignments only those essential questions necessary to a determination of the appeal in this court will be considered. Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 219 S.W.2d 333, 8 A.L.R.2d 710; Crews v. Sikeston Coca-Cola Bottling Co., 240 Mo. App. 993, 225 S.W.2d 812.

In contending that the court abused its discretion in granting a new trial because of Juror Williams' failure to make full disclosure concerning his wife's pending action for damages the appellant Logsdon realizes that he has an "up-hill climb," but insists nevertheless that upon the record the court's exercise of discretion did not rest upon any reasonable foundation in fact. In this connection it is urged that in all the cases in which a new trial has been granted "a pattern emerges" and there is present the constant factor of "moral

laxity or turpitude of the juror, or an unusually disturbing fact in his personal background, was present *in conjunction with* his failure to disclose facts on voir dire examination." While it may be possible to find some pattern in the cases, it is not necessary to append this refinement to the established rules. The mere failure of a juror, even after specific inquiry, to make full disclosure of his or his family's claims for damages does not always compel the granting of a new trial. Annotation 38 A.L.R.2d 624, 631. But, the granting of a new trial because of a juror's misconduct in failing to make full disclosure in these respects is the exercise of a discretionary power, Woodworth v. Kansas City Public Service Co., Mo., 274 S.W.2d 264, and for that very reason it necessarily makes a vast difference in this court whether and how the trial court exercised its discretion, whether the trial court refused or granted a new trial. Girratono v. Kansas City Public Service Co., Mo., 272 S.W.2d 278, 281; Reich v. Thompson, 346 Mo. 577, 586, 142 S.W.2d 486, 491, 129 A.L.R. 795. Here, the trial court deeming the juror's failure prejudicial and having granted a new trial for the specific reason assigned in the motion, the only question is whether the trial court's exercise of discretion is reasonably supported by the record. Girratono v. Kansas City Public Service Co., supra.

The plaintiff urges upon this court that the juror's failure to disclose the fact was a mere innocent inadvertence, that he was not even aware of the fact that the suit had been filed. It was the juror's version of his failure to disclose the fact of his wife's pending suit that after his wife's injury he called his employer's attorney and informed him of the facts and that the attorney investigated the solvency of the boy who was driving a car borrowed from a boy friend and found that he was not financially responsible and had no liability insurance and, according to the juror, he did not know that the suit had been filed.

Nevertheless, the admitted fact was that Juror Williams was driving his automobile when it was involved in a collision with another car and his wife was injured. The juror, not his wife, called the lawyer. The suit was filed, not against the boy who was driving the car or the boy who had loaned it but against his friend's employer, the Grandview Super Market. The petition in the wife's suit alleged serious personal injuries and claimed damages in the sum of $15,000 and was then pending at Independence. It is not necessary to set forth all the circumstances and consider the possible inferences, but defense counsel first inquired whether any member of the panel had ever had a claim for damages. Juror Williams responded affirmatively and told about a claim he had had for personal injuries from an automobile collision in 1951. The claim was settled satisfactorily. When defense counsel sought to go into details concerning the claim and settlement plaintiff's counsel objected and the court sustained the objection. In the handling of his claim Juror Williams employed a lawyer, the same lawyer who filed his wife's suit for damages. Then defense counsel stated that he wished to "broaden" the question and he made this general inquiry, " * * * if any members of your close, immediate family had a damage suit for personal injury, or if any members of your close, immediate family have had a claim for personal injury, whether or not a lawsuit was filed * * *." Juror McCrary told about a claim for his son's serious personal injuries resulting from an automobile collision but Juror Williams, having forgotten his wife's claim and, as he said, not knowing that a suit had been filed made no response. There is no claim that the juror did not understand the question or its significance, he answered as to his own claim which had been settled. While the lawyer was not then aware of the fact, plaintiff's counsel represented the defendant in Mrs. Williams' suit for damages then pending in Independence. The trial court

found, despite the juror's claim to the contrary, that the juror did know of his wife's pending action for damages, that he intentionally concealed the fact after specific inquiry and that he was prejudiced against the defendant and, without further detailed analysis of all the facts and circumstances, the court's finding and exercise of discretion is reasonably supported by the record. Woodworth v. Kansas City Public Service Co., supra; Girratono v. Kansas City Public Service Co., supra; annotation 38 A.L.R.2d 624, and the essentially meritorious questions upon this appeal are whether the plaintiff made a submissible case against Duncan and Gover.

The plaintiff, Logsdon, and the defendants, Duncan and Gover, as well as the witness Guthrie Rogers, were all employed by the Kansas City Board of Education. They were engaged in remodeling and repairing the caretaker's old two-story brick and stone residence at Yates School. Among other tasks they removed an oval-shaped window from the front gable and replaced it with stucco and for that purpose had a scaffold across the front of the house about even with the guttering. In the absence of a foreman, Rogers, a bricklayer, was the "lead man" and Logsdon was his helper. Duncan and Gover were common laborers, sent there by the foreman, and at the particular time were engaged in removing stone and old bricks from the gable. Rogers was engaged in laying bricks around a first-floor window near an angle in the house and just below an old chimney. Logsdon was cleaning old bricks and carrying them to Rogers. When Logsdon was injured Duncan was on the scaffold and Gover was engaged on the ground near Logsdon. A ball, presumably a "soft-ball," some sticks and two or three pieces of bricks were lodged behind the chimney. As Logsdon walked towards the first-floor window with an armload of bricks Duncan, with one foot on the scaffold and one leg on the edge of the roof, punched and dislodged the debris from behind the chimney with a board and a half brick hit Logsdon on the

head. And, as stated in the beginning, Logsdon instituted this action against Duncan and Gover to recover damages for his resulting personal injuries.

Again it is not necessary to detail all the circumstances and analyze the numerous claims and all the possible inferences. Duncan in claiming that the court should have directed a verdict in his favor urges that there was no evidence that he was negligent. He urges, when he dislodged the debris, that he had a right to assume, because Gover had warned him, that Logsdon was in a place of safety. It is said that after being warned by Gover he walked from a place of safety into a place of danger and thereby assumed the risk of injury and was guilty of contributory negligence as a matter of law. It is also urged that there is no evidence that Duncan's failure to look over the edge of the scaffold before dislodging the bricks and ball was the proximate cause of his injury because Logsdon admittedly received a warning and was then standing in a place of safety. In so contending Duncan relies, in large part, upon the rules applied to obvious, known dangers in the possessor of land-invitee cases and to the tests of obliviousness, position of peril and warning in humanitarian cases concerned with pedestrians and vehicles involved in railroad crossing accidents. For example: Murray v. D'Oench Co., 347 Mo. 365, 147 S.W.2d 623; Dietz v. Magill, Mo.App., 104 S.W.2d 707; Pentecost v. St. Louis Merchants' Bridge Terminal R. Co., 334 Mo. 572, 66 S.W.2d 533, and Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824. These instances are helpful only in so far as they illustrate by analogy certain general principles. So too of the cases against employers necessarily based upon the doctrine of respondeat superior in which there was no evidence of a duty to warn either by another employee or by the employer, or in which the employee was injured by an obvious danger. It may be, in the circumstances of these specific instances, that there is no liability on the employer. Ring v. Missouri Pacific Ry.

Co., 112 Mo. 220, 20 S.W. 436; Mihelich v. Mignery, 155 Mo.App. 325, 136 S.W. 722; Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345. In addition, this is not a suit by a so-called "servant" against his so-called "master" and we are not concerned with the common-law defense of the fellow servant rule. Prosser, Torts, p. 378; Schmeizer v. Central Furniture Co., 134 Mo.App. 493, 114 S.W. 1043.

■■ This is an action by an employee against two of his fellow employees for their personal negligence and breach of duty to him. And while the instance is rather infrequent, it is nevertheless governed by the most elemental principles of tort liability. For their mutual safety all employees are necessarily dependent upon the care they exercise with respect to one another and by reason of their relationship each employee owes to his fellow workman the duty "to exercise such care in the prosecution of their work as men of ordinary prudence use in like circumstances, and he who fails in that respect is responsible for the resulting physical injury to his fellow servant." 35 Am.Jur., Secs. 526, 527, pp. 955–956; 57 C.J.S., Master and Servant, § 578, p. 348; Annotation 28 L.R.A. 433; Seavey, Studies In Agency, p. 1; 2 Restatement, Agency, Sec. 359; Steinhauser v. Spraul, 114 Mo. 551, 21 S.W. 515, 859; Jost v. American Car & Foundry Co., Mo., 246 S.W. 340. And certainly it requires no analysis to demonstrate that the dislodging of a brick from behind a chimney on a two-story house so that it falls and strikes an unsuspecting fellow workman on the head is not the prudent exercise of due care, unless, of course, the employee had notice and knowledge and the circumstances are such as to demonstrate that he was guilty of contributory negligence as a matter of law. Schmeizer v. Central Furniture Co., 134 Mo. App., loc. cit. 500, 114 S.W., loc. cit. 1045.

Duncan did not see Logsdon and he does not claim that he looked before dislodging the debris. He claimed that he could not see the men on the ground beneath the chimney unless, perhaps, he leaned over the edge of the scaffold. He does not claim that he personally warned Logsdon of his intention to dislodge the debris from behind the chimney. Gover was then on the ground and Duncan says, "I told him if there was anyone working down there at the corner of the building, to tell anyone that was around there to clear out." Then, he says, "soon after" Gover "hollered back and said, 'Everything is in the clear.'" He says he heard Gover tell them "to get back, that plunder, junk or debris, that I was going to knock it off of the roof." Rogers, the bricklayer, was working up against the wall and he said, "I believe Gover hollered down and said: 'You fellows step back out of the way. We are going to knock this ball down.'" He says positively that neither Duncan nor Gover mentioned knocking anything from the roof other than the six-inch "indoor ball" Rogers had previously seen behind the chimney. Logsdon had been on the scaffold earlier in the day and he had seen the "indoor ball" behind the chimney but he saw no pieces of bricks or other debris. It was his idea that Duncan could not reach the ball from the scaffold with a board and that he threw a half-brick at the ball in an effort to dislodge it. However, as to any warning, he said, "Why, he (Gover) just told us that Mr. Duncan was going to knock a ball from between the chimney up there and the roof, and he told us to move on up to the other end of that little runway there." He says there was no warning that Duncan was going to dislodge a brick or debris or any other object than a ball and the inference he would have drawn is that whatever warning Gover gave was not timely and that the brick fell before he had time to return to a place of safety. But as to the essentially meritorious question he was pressed by the court.

"The Court: When he told you to get away from there, that they were going to

knock that ball down, what did you hesitate for? What did you pick up some more bricks for?

"The Witness: Well, I just told you,—well, because he mentioned a ball, he never said anything about any brick.

"The Court: Even a ball, why did you hesitate there and pick up some bricks? * * *

"The Witness: Well, there shouldn't have been any danger. A little ball wouldn't hurt nobody, even if they had throwed it at me. * * *

"The Court: Did you still have these bricks in your arm when you were hit?

"The Witness: No, I didn't. I had throwed them down.

"The Court: Where did you go, and what were you doing when you got hit then?

"The Witness: I was on the way out of there.

"The Court: Why?

"The Witness: Well, because he told me to leave. That is why."

■ Again it is not necessary to analyze and demonstrate the various possible inferences, it is sufficient to say in these detailed circumstances that reasonable minds could well differ as to the reasonableness, timeliness and adequacy of the warning as well as to Logsdon's conduct and appreciation of the hazard. 65 C.J.S., Negligence, § 119, p. 720. In the circumstances, whether he "assumed the risk," or walked from a place of safety to a place of danger after a warning and whether he was guilty of contributory negligence were all questions of fact for the jury to resolve and could not be declared as a matter of law. And so it was with Duncan's conduct and whether his failure to look was the proximate cause of Logsdon's injuries. Steinhauser v. Spraul, supra; Jost v. American Car & Foundry Co., supra; Schmeizer v. Central Furniture Co., supra; Hughlett v. Ozark Lumber Co., 53 Mo.App. 87; McCarver v. St. Joseph Lead Co., 216 Mo.App. 370, 384–385, 268 S.W. 687, 690.

On the other hand, the defendant Gover did not dislodge the brick from behind the chimney and the plaintiff, Logsdon, does not claim that Gover violated the primary duty one employee owes to another and was for that reason guilty of negligence and subject to liability. 35 Am.Jur., Secs. 526–527, pp. 955–956. He does not claim that Gover owed or breached any moral obligation (Bohlen, Studies In The Law Of Torts, p. 291), nor does he, apparently, rely upon the duty of one to exercise due care after voluntarily assuming to aid or rescue another in peril and to whom there was no duty initially. 2 Restatement, Torts, Secs. 324–325; Prosser, Torts, pp. 182–190. The fact of the matter is that the plaintiff has not carefully and precisely spelled out his theory of Gover's liability. He has excerpted, purportedly from Marks v. Nambil Realty Co., 245 N.Y. 256, 157 N.E. 129, the felicitous aphorism, " 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all' ", and urges that it applies to the circumstances and to Gover's conduct. But, Mr. Justice Cardozo originally wrote this sentence in Glanzer v. Shepard, 233 N.Y. 236, 239, 135 N.E. 275, 276, 23 A.L.R. 1425, and, as would be expected, the appropriateness and precise applicability of the happily phrased sentence is to be found in its context. "The Ratio Decidendi Of A Case," Arthur L. Goodhart, Jurisprudence In Action, pp. 193–222. Reference to the authorities cited by Mr. Justice Cardozo, particularly 1 Street, Foundations of Legal Liability, pp. 186–187 (and see Prosser, Torts, p. 544), illustrates precisely the instances and cases to which the aphorism was then peculiarly appropriate. More recent instances in which the sentence was appropriately quoted are Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35 and Wolfmeyer v. Otis

Elevator Co., Mo., 262 S.W.2d 18. But assuming, if it is necessary to spell out a possible theory as to Gover's liability, that there is some analogy in the aphorism or that there is some basis of liability other than the breach of his primary duty to a fellow employee, see, for illustration, 2 Restatement, Torts, Sec. 323; Nelson v. Chicago, M., St. P. & Pac. R. Co., 252 Wis. 585, 32 N.W.2d 340, the plaintiff's cause is not materially aided for upon this record there is no evidentiary support for the breach of any such duty or theory of liability.

█ Gover did not testify and so we do not have first-hand information as to what he knew or saw or did. As far as appears from Logsdon's claim and evidence Gover did not know that there were any pieces of bricks lodged behind the chimney. The inference from Logsdon's testimony is that Gover warned him of the only hazard of which he had knowledge—the soft ball, and, whether the warning of that danger was timely and adequate or not, Logsdon did not rely upon it. He said, "Well, there shouldn't have been any danger. A little ball wouldn't hurt nobody, even if they had throwed it at me." Duncan did not claim that he told Gover to warn of falling bricks. He said, "I told him if there was anyone working down there at the corner of the building, to tell anyone that was around there to clear out." When pressed on cross-examination he said, "I just told him there was a ball with some debris there behind the flue and for him to see that there was no one down in that area working." Then, he says, he heard Gover tell them "to get back, that plunder, junk or debris, that I was going to knock it off of the roof." Plaintiff's witness Rogers, the "lead man," testified that Gover "hollered down and said: 'You fellows step back out of the way. We are going to knock this ball down.'" In short, whatever Gover said

and did, and whether relied upon or not, was at the request of his fellow employee Duncan and not for the reason that he gratuitously assumed to act in circumstances in which there was no duty initially. In any event, this particular evidence and all the circumstances concerning Duncan's knocking the pieces of bricks from behind the chimney and Logsdon's resulting injuries does not demonstrate with probative force that Gover, in the somewhat confusing language of Logsdon's brief, "* * * once he took upon himself the onus of directing plaintiff's activity under circumstances tending to show his superior knowledge of the facts, he assumed the duty to refrain from acting negligently in either failing to warn plaintiff of the danger known only to Gover while at the same time actively directing plaintiff to move in a danger zone, or to refrain from directing that the object be dislodged while plaintiff was in a patent position of peril," or that he negligently breached any of the duties which have been assumed solely for the purposes of this opinion.

█ These matters are determinative of the appeal and, as indicated earlier, we are not concerned with whether the verdict was excessive or with whether the court erred in giving or refusing instructions. Girratono v. Kansas City Public Service Co., supra; Noah v. L. B. Price Merc. Co., 208 Mo.App. 149, 231 S.W. 300.

Accordingly the judgment is affirmed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.