

# SUPREME COURT OF MISSOURI
## en banc

DANNY BROCK,               )
                                     )
                Respondent,       )
                                     )
v.                                     )      No. SC97542
                                     )
PETER DUNNE, in his Capacity as Defendant   )
Ad Litem for MARK EDWARDS, Deceased,     )
                                     )
                Appellant.        )

*Opinion issued November 9, 2021*

---

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Nancy Watkins McLaughlin, Judge

Peter Dunne, defendant ad litem for Mark Edwards, appeals a judgment in favor of Danny Brock on his negligence claim against Edwards. Dunne claims the circuit court erred in overruling his motions for directed verdict and judgment notwithstanding the verdict ("JNOV") because Brock failed to make a submissible case of common law negligence and Edwards is immune from liability under section 287.120.1[1] of the workers' compensation law. The Court finds the circuit court erred in overruling Dunne's motions for directed verdict and JNOV. The circuit court's judgment, therefore, is reversed.

---

[1] Statutory references are to RSMo Supp. 2012 unless otherwise noted.

## Factual and Procedural History

Brock worked at JMC Manufacturing on its lamination line with Edwards, a supervisor at JMC. In its laminating operations, JMC utilizes a high-pressure laminating machine manufactured by Black Bros. Co. Edwards and the employees under his supervision fed sheets of particle board, gypsum, or medium-density fiberboard into one end of the machine. The machine then applied a layer of glue to a sheet as a pair of rollers sitting above it, and second pair of rollers sitting below the sheet, propelled the sheet through the machine. A safety guard comprised of a hinged metal grate rested over the bottom pair of rollers and guarded the pinch point created where the bottom rollers meet each other. The safety guard could be removed from its position over the pinch point while the machine was running to provide access to the bottom rollers.

On April 30, 2013, Edwards, Brock, and two other employees used the machine to laminate particle board. Edwards fed sheets of particle board into the machine and then moved to the output side of the machine. As glue-covered sheets began to emerge from the machine, Brock and another employee caught the front end, and Edwards and a different employee caught the back end. Together, the four employees carried the sheet to a set of rollers where two of the employees applied the laminate to the glue-covered side of the sheet. The four of them caught a sheet as it was fed out of the machine when Edwards noticed glue was applied too heavily, causing it to drip onto the machine's bottom rollers.

Because leaving glue on the bottom rollers would result in applying unwanted glue to the bottom of the next sheet they fed into the machine, Edwards instructed Brock to

2

clean the glue off the rollers. Notwithstanding his awareness of JMC's safety rules[2] and the machine's warnings,[3] Edwards removed the safety guard that shielded the pinch point created by the bottom rollers while the machine was still running. Using a method of cleaning the rollers that Edwards had previously instructed him to use, Brock then squeezed water from a wet rag onto the rollers and held a brush to the bottom rollers as they turned. Because Edwards pulled the safety guard out of position, exposing the pinch point, the wet rag caught in the rollers and pulled Brock's thumb into the pinch point, crushing it. Brock underwent three surgeries to repair his thumb, but his surgeon testified the damage was permanent and he would be subject to permanent pain, hand-use limitations and a lifelong restriction from heavy labor.

Brock applied for and received workers' compensation benefits for his injury. He also filed a petition asserting product liability and negligence claims against Black Bros. Co.[4] and a negligence claim against Edwards. Brock alleged Edwards negligently caused his injury when Edwards:

---

[2] Edwards knew JMC's safety rules prohibited him from removing the safety guard while the machine was in operation. He also knew that, if he were to remove the safety guard, JMC required him to turn the machine off before removing it; to comply with JMC's lock out and tag out procedures, which would effectively disable the machine, while it was removed; and to replace the safety guard before restarting the machine.

[3] Additionally, Edwards was aware of safety decals on the machine warning of the danger created by the machine's pinch point.

[4] Brock's product liability and negligence claims against Black Bros. Co. alleged the machine was defective, unreasonably dangerous when used in a reasonably anticipated way, lacked both adequate safety devices and warnings, and the company failed to test or investigate the hazards of the machine. Brock and Black Bros. Co. agreed to an $80,000 settlement, and Brock dismissed his claims against the company before trial.

a. removed a safety device from the machine;

b. ordered the machine to be cleaned while it was in operation and after the safety guard was removed;

c. failed to instruct or warn of the exposed immediate dangers, despite being aware of the hazards of the machine and the hazard of removing the safety guard; and

d. disregarded complaints as to the unsafe condition of the machine and instructed Brock to clean it without the safety guard.

Edwards died before trial, and Dunne was substituted as defendant ad litem pursuant to Rule 52.13(a).

At trial, Dunne filed a motion for a directed verdict, claiming: (1) Brock failed to make a submissible case of negligence under the common law; (2) section 287.120 released Edwards from liability because Edwards' conduct did not constitute an "affirmative negligent act that purposefully and dangerously caused or increased the risk of injury"; (3) Edwards' acts were within the scope of JMC's nondelegable duties; and (4) Edwards did not proximately cause Brock's injury. The circuit court overruled Dunne's motion, and the jury returned a $1.05 million verdict in Brock's favor. On the same grounds as his motion for a directed verdict, Dunne then filed a motion for JNOV, which the circuit court also overruled. The circuit court reduced the jury's verdict by Brock's $80,000 settlement with Black Bros. Co. and then by the 10- percent fault the jury assigned to Brock. It entered judgment in Brock's favor for $873,000, plus prejudgment interest and costs. Dunne appealed, and this Court granted transfer after an opinion by the court of appeals. Mo. Const. art. V, sec. 10.

4

## Standard of Review

The standards of review for a circuit court's overruling of a motion for directed verdict and JNOV are essentially the same. *City of Harrisonville v. McCall Serv. Stations*, 495 S.W.3d 738, 748 (Mo. banc 2016). "This Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Robinson v. Langenbach*, 599 S.W.3d 167, 176 (Mo. banc 2020) (internal quotation omitted). "A case is submissible when each element essential to liability is supported by legal and substantial evidence." *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 459-60 (Mo. banc 2017). Substantial evidence is evidence that "has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Kenney v. Wal-Mart Stores, Inc.*, 100 S.W.3d 809, 814 (Mo. banc 2003).

"Whether the plaintiff made a submissible case is a question of law that this Court reviews *de novo*." *Newsome v. Kan. City, Mo. Sch. Dist.*, 520 S.W.3d 769, 775 (Mo. banc 2017) (internal quotation omitted). When conducting this review, the "Court views the evidence in the light most favorable to" Brock and disregards evidence that is unfavorable to the verdict. *Johnson*, 523 S.W.3d at 460 (internal quotation omitted). However, the Court will not "supply missing evidence or give [Brock] the benefit of unreasonable, speculative or forced inferences." *State v. Lehman*, 617 S.W.3d 843, 847 (Mo. banc 2021) (internal quotation omitted).

5

**Analysis**

*Co-Employee Immunity*

In 2012, the legislature amended section 287.120.1 of the workers' compensation statute providing immunity for employees from liability to fellow employees arising out of injuries occurring in the workplace. Prior to 2012, the workers' compensation statute provided employers with immunity from common law negligence actions, but the statute "was silent as to *co-employees*." *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 790 (Mo. banc 2016) (emphasis in original). Before the amendment, co-employees had no immunity and could be held liable under common law for accidents occurring in the workplace. But the various common law doctrines governing the employer-employee relationship complicated the legal analysis of the duty employees owed to other employees in the workplace. Over the years, appellate case law applying these competing common law doctrines developed and evolved, attempting to delineate the basis for the common law liability for co-employees. Unfortunately, this jurisprudence shifted and swung like a pendulum, causing confusion for litigants, employees, and employers.[5] The 2005

---

[5] Over the years, Missouri appellate opinions inconsistently applied and explained the law surrounding co-employee liability. *See, e.g.*, *Schumacher v. Leslie*, 232 S.W.2d 913, 918 (Mo. banc 1950) (finding exclusivity of workers' compensation statute does not abrogate common law claims against third persons, including co-employees); *Craft v. Scaman*, 715 S.W.2d 531, 537 (Mo. App. 1986) (finding liability for co-employees without a predicate intentional act, requiring only that the actor breach a personal duty of care); *Rhodes v. Rogers,* 675 S.W.2d 107, 108 (Mo. App. 1984) (requiring an intentional act to establish a common law duty as part of the "something more" test); *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 178-79 (Mo. App. 1982) (finding no common law duty for co-employees with the "something more" test).

legislative amendment requiring strict construction of workers' compensation statutes only added to the confusion, and courts after the 2005 amendment generally held workers' compensation statutes provided no immunity to co-employees, unlike their employers. *See Peters*, 489 S.W.3d at 790 (finding co-employee liability under the post-2005 strict construction amendment and the pre-2012 statute); *Robinson v. Hooker*, 323 S.W.3d 418, 423–25 (Mo. App. 2010) (finding the strict application of the definition of "employer" meant co-employees were not entitled to invoke employer immunity under workers' compensation statutes).

The legislature settled this confusion in 2012 by amending section 287.120.1 to provide co-employees immunity from common law liability for accidents occurring in the workplace. For cases alleging co-employee liability arising after this amendment, the analysis must turn its focus from the common law to section 287.120.1 to determine whether the statute bars the suit from proceeding. The relevant portion of the statute states:

> Any employee of such employer shall not be liable for any injury … and … shall be released from all other liability whatsoever … except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury.

§ 287.120.1.

This new statutory language provides co-employees with immunity from suit when they would otherwise be liable at common law unless the exception set forth in the statute is satisfied. The new statute, however, does not create or extend liability to employees as Brock contends. Brock maintains section 287.120.1 preempts co-employee liability under common law and creates a new statutory cause of action for such claims, but "'[w]here the

7

legislature intends to preempt a common law claim, it must do so clearly.'" *Alcorn v. Union Pac. R.R. Co.,* 50 S.W.3d 226, 235 (Mo. banc 2001) (quoting *Overcast v. Billings Mut. Ins. Co.,* 11 S.W.3d 62, 69 (Mo. banc 2000)), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29, 40 (Mo. banc 2013). Section 287.120.1 does not preempt the common law claim and create a new statutory cause of action for co-employees to bring against their culpable co-workers. Instead, as a workers' compensation statute, it provides immunity to co-employees and employers unless the statutory exception applies.[6] As defendant ad litem for co-employee Edwards, Dunne is, therefore, immune from liability for Brock's injury unless the exception to the immunity statute applies. Determining whether the immunity exception applies requires interpreting the statutory language of section 287.120.1, a question of first impression for this Court.

This Court gives statutory language its plain and ordinary meaning. *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013). "When the words are clear, there is nothing to construe beyond applying the plain meaning of the law." *Id.* (quoting *State v. Rowe*, 63 S.W.3d 647, 649 (Mo. banc 2002)). The language of section 287.120.1 unambiguously articulates the legislature's intention that co-employees have immunity

---

[6] In the absence of interpretation from this Court, federal courts have also concluded the 2012 amendment does not abrogate common law. *See Hawkins v. St. Louis Rams, LLC*, No. 4:18CV382 RLW, 2019 WL 367644, at *4 (E.D. Mo. Jan. 30, 2019) ("[S]ection 287.120.1 post-2012 does not create a cause of action by which an injured employee can bring a lawsuit against a co-employee; rather, it provides co-employees with immunity unless the injured employee can establish the co-employee's conduct meets the exception."); *Sherman v. Tyson Foods, Inc.*, No. 17-06031-CV-SJ-GAF, 2017 WL 5957769, at *3 (W.D. Mo. Sept. 18, 2017) ("The current section excludes co-employees from liability under the Workers' Compensation Act, and purports to limit co-employees' potential liability under the common law.").

8

from civil liability for injuries they cause on the job. The statute provides an exception to this broad immunity, however, when "the employee engaged in [1] an affirmative negligent act that [2] purposefully and dangerously caused or increased the risk of injury." § 287.120.1. By its plain text, the statute provides a mental element to the exception: a co-employee enjoys immunity unless he or she *purposefully* caused or increased the risk of injury. Co-employees, therefore, are statutorily immune from liability unless they engaged in an affirmative negligent act that *purposefully* and dangerously caused or increased the risk of injury.[7] *Id.*

The statutory immunity provided by section 287.120.1 is an affirmative defense. *See McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 479 (Mo. banc 2009). Generally, a defendant has the burden to prove affirmative defenses. *Warren v. Paragon Techs. Grp., Inc.*, 950 S.W.2d 844, 846 (Mo. banc 1997). Brock, however, bears the burden of establishing the exception to the immunity set forth in section 287.120.1. In other words, Dunne's burden is to show Edwards was a co-employee of Brock and, therefore, entitled to immunity under the statute. This fact is undisputed and uncontested in this case. The

---

[7] The exception to co-employee immunity under section 287.120.1, however, is not waived by a co-employee's *purposeful act*. Rather, the statute requires the co-employee act with the purpose, or state of mind, to cause or increase the risk of injury. In other words, the language of the statute requires an affirmative negligent act done with the *purpose for a desired outcome, not a purposeful act*. For example, if a co-employee purposefully and intentionally engages in conduct that causes or increases the risk of injury, but does so with the purpose of increasing productivity or output, then the co-employee has not acted with the purpose of causing or increasing risk of injury within the meaning of the statute. To the extent the dissenting opinion suggests otherwise, it misconstrues the statute as the plain text of the statute requires a plaintiff establish the defendant acted with the mental state to cause or increase the risk of injury.

9

burden then shifts to Brock to show Edwards' actions came within the statutory exception to the general rule of statutory immunity.

Under the plain and ordinary meaning of the statute's language, section 287.120.1 immunity will shield a co-employee's negligent act unless the plaintiff can establish the co-employee engaged in affirmative conduct that constitutes at least negligence[8] and the co-employee must purposefully and dangerously cause or increase the risk of injury through that conduct. In the present case, the Court must review the record and determine whether Brock presented sufficient facts to the circuit court to establish Edwards engaged in affirmative negligent conduct with the specific purpose to cause or increase the risk of injury.

But, there is no direct evidence demonstrating Edwards acted with the purpose to cause or increase the risk of injury, and any inference he did so would be "unreasonable, speculative or forced." *Lehman*, 617 S.W.3d at 847. Nonetheless, Brock infers Edwards acted with the requisite purposeful mental state. Specifically, Brock argues the factfinder could infer Edwards acted with the purpose to increase risk of injury to Brock simply from the fact Edwards intentionally removed the safety guard knowing JMC safety rules and the

---

[8] The conduct must be an affirmative act that a reasonably careful person would not do under the circumstances. *See Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985) (listing the elements of a negligence claim: "(1) legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the claimant's person or property"); *see also Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976) ("The reasonable anticipation of danger is an essential element of actionable negligence; and whether negligence exists in a particular situation depends on whether or not a reasonably prudent person would have anticipated danger and provided against it.").

10

machine's manufacturer prohibited and warned against removing the guard during operation. Reaching this conclusion, however, is not reasonable and requires improper speculation based on the evidence presented to the circuit court. *See id.* at 846 (The Court "accepts as true all evidence tending to prove guilt together with all *reasonable* inferences that support the verdict." (emphasis added)).  Even though direct evidence of intent may be rare, there is still not sufficient evidence here to make a reasonable inference that Edwards lifted the safety gate with the intention and purpose to increase the risk of injury to Brock.  Making such an inference is neither reasonable nor rational given the circumstances surrounding this case.  *Id.*  The injuries Brock suffered are tragic, but they resulted from an unfortunate accident in the workplace, not the deliberate and deviant actions of a co-worker who sought and desired to cause or increase the risk of injury to a co-employee.

Moreover, Brock's justification for inferring malice on the part of Edwards dilutes and erodes the meaning of "purpose" as used in section 287.120.1.  The ordinary meaning of the word "purpose" as defined in *Webster's Third New International Dictionary* is "something that one sets before himself as an object to be attained." *Purpose*, Webster's New Int'l Dictionary 1847 (3d ed. 2002).  Missouri case law is consistent with this dictionary definition of purpose.  An individual acts purposely "when it is the person's 'conscious object to engage in that conduct or to cause that result.'" *State v. Michaud*, 600 S.W.3d 757, 760 (Mo. banc 2019); *see also Laut v. City of Arnold*, 491 S.W.3d 191, 193 (Mo. banc 2016) (finding purposely meant "acting with a 'conscious design, intent, or plan' to violate the law and did so 'with awareness of the probable consequences.'" (alteration

11

omitted)); *State v. McNabb*, 621 S.W.3d 658, 661 (Mo. App. 2021) (citing *State v. Keeler*, 856 S.W.2d 928, 931 (Mo. App. 1993)) (finding the fact a defendant knows his actions could or would cause a particular result "is not the requisite mental state of acting purposely" and, instead, requires that the "defendant desired to produce a particular outcome"). Applying this definition of purpose, the evidence necessary to support the inference Brock promotes would need to demonstrate that, when Edwards removed the safety guard, his purpose - or the conscious object of what he sought to attain - was to increase the risk of injury to Brock. For the exception to immunity to apply, section 287.120.1 requires Edwards to act with the conscious object of increasing the risk of injury to Brock or someone else. Brock did not present sufficient evidence for a factfinder to reasonably infer Edwards acted with such conscious object.

While the evidence would support a finding that Edwards acted outside the safety rules, this evidence merely demonstrates Edwards acted negligently, not that he intended to cause or increase the risk of any injury to Brock or others. The fact that an intentional act may increase the risk of injury to others does not unequivocally lead to the conclusion that the actor intended to increase the risk of injury. Absent more, a negligent act is, simply, negligence. *See, e.g.*, *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 622 (Mo. banc 2002) (The negligent operation of a vehicle "is not the kind of purposeful, affirmatively dangerous conduct that Missouri courts have recognized as moving a fellow employee outside the protection of the Workers' Compensation Law's exclusive remedy provisions."), *overruled on other grounds by McCracken*, 298 S.W.3d at 478-79.

12

The lack of any evidence or reasonable inference establishing Edwards' purpose to cause or increase the risk of injury is fatal to Brock's claim. Brock cannot satisfy the requirements to trigger the immunity exception under section 287.120.1. Because Brock failed to present sufficient evidence for the court to find Edwards' affirmative, negligent act was employed purposefully and dangerously to cause or increase the risk of injury, Dunne was legally entitled to immunity under section 287.120.1. The circuit court erred, therefore, in overruling Dunne's motion for directed verdict and JNOV.

*Common Law Basis for Liability*

Having found Dunne immune from liability, no additional analysis is required. The dissenting opinion, however, seeks to re-analyze co-employee liability under common law and disregards this Court's recent holding in *Conner v. Ogletree*, 542 S.W.3d 315 (Mo. banc 2018).[9] In attempt to avoid the confusion to litigants, employees, and employers, the Court will address the issue of common law liability of co-employees in the workplace.

---

[9] The dissenting opinion contends the holding in *Ogletree* does not apply to this case and instead is limited to cases involving injuries occurring prior to 2012. While *Ogletree* did in fact address co-employee liability for injuries occurring between 2005 and 2012, *Ogletree*, 542 S.W.3d at 324, its holding is still controlling precedent for common law liability for co-employees. As noted above, the legislature in 2012 amended section 287.120.1 addressing, for the firsttime, liability of fellow employees arising out of injuries occurring in the workplace. Because all the injuries alleged in *Ogletree* occurred prior to 2012, this Court avoided applying section 287.120.1 and strictly addressed liability for co-employees as recognized by common law. The amendments to section 287.120.1 do not create a cause of action but rather establish immunity for co-employees for common law liability. Because no new cause of action was created by section 287.120.1, plaintiffs must establish a common law claim to be entitled to recovery. Because *Ogletree* set forth and clarified the common law liability for co-employees, the Court's common law analysis in *Ogletree* remains good law and extends beyond the amendment to section 287.120.1 enacted in 2012. Therefore, this Court's common law analysis in *Ogletree* applies to workplace injuries occurring after 2012 and must be applied to the facts of this case.

13

Under common law, co-employee liability involves the multi-step analysis this Court plainly laid out in *Ogletree*. First, the plaintiff must demonstrate a claim of negligence. *Id.* at 324. Then, the plaintiff must show the nondelegable duty doctrine does not apply to a co-employee's actions. *Id.* Simply put, the plaintiff must show the defendant co-employee breached a duty separate and apart from the employer's foreseeable duty to provide a safe workplace:

> A co-employee can only be liable for such injuries if the employer (prior to workers' compensation) would not have been liable because the co-employee either breached a duty unrelated to the master-servant relationship or committed a breach of workplace safety that was so unforeseeable to the employer as to take it outside the employer's nondelegable duty to provide a reasonably safe workplace.

*Id*. (emphasis omitted). The dissenting opinion's analysis would expand a co-employee's duty to exercise ordinary care in the workplace into the employer's nondelegable duty to provide a safe workplace, conflicting with this Court's clear language and holding in *Ogletree* and other co-employee liability cases recognizing the broad scope of an employer's duty to provide a safe workplace.

---

The dissenting opinion also engages in a lengthy analysis contending *Ogletree* misapplied and misstated common law precedent. But this issue was fully litigated and addressed in 2018 by the parties and this Court's principal and concurring opinions in *Ogletree*. The holding in *Ogletree* and its companion cases is the law of this state and should not be retracted or set aside based solely on a new set of facts and fresh review of the legal issues. *Eighty Hundred Clayton Corp. v. Dir. of Revenue*, 111 S.W.3d 409, 411 n.3 (Mo. banc 2003) ("[A] decision of this Court should not be lightly overruled."). Nothing has changed from 2018 that would warrant overriding this Court's precedent and, once again, amending and shifting the law on common law liability for co-employees in this state.

14

One such case recognizing the broad scope of the employer's duty is *Kelso v. W.A. Ross Construction Co.*, 85 S.W.2d 527 (Mo. 1935). In *Kelso*, the plaintiff was injured when a truck owned by his employer backed into him. *Id.* at 529. While the driver of that truck may not have exercised ordinary care at the worksite, the *employer* was held liable because the injury fell within the employer's nondelegable duty to provide a safe workplace. *Id.* at 537. Other case law has similarly held that an employee's negligent act falling within the employer's nondelegable duty to provide a safe work environment makes the employer liable for the negligent conduct. *See Peters*, 489 S.W.3d at 800 (holding the employer has a "nondelegable duty to provide a safe work environment, and it breaches that duty where it charged an employee with the responsibility to provide a reasonably safe work environment but the employee did not so provide" (citation omitted)); *see also Bender*, 276 S.W. 405, 408 (Mo. 1925) (holding the employer is "liable for the negligent performance of any act directed by it to be performed by any employee, whether of high or the most lowly degree, which affect[s] the safety of [the work]place").

Drawing from the holdings in *Kelso* and other cases, this Court in *Ogletree* found no common law liability for co-employees of the injured plaintiff even though the co-employees may have negligently failed to follow established workplace rules. This Court so held because the plaintiff's injury fell within the employer's nondelegable duty to provide a safe work environment. *Ogletree*, 542 S.W.3d at 328. Therefore, the employers breached their duty to the plaintiffs under common law, and the co-employees could not be held liable for the employers' breach because the plaintiffs did not show a duty separate and distinct from the employers' nondelegable duty to provide a safe workplace. *Id*. In

15

*Ogletree*, this Court held an employee's negligent act in driving a forklift fell within the employer's nondelegable duty; therefore, the co-employee could not be held liable at common law. *Id*. As *Ogletree* recognized, it is the employer's sole duty to provide a safe work environment, and a co-employee's negligence in carrying out the duties assigned to the employee by the employer is not actionable at common law as a breach of a duty separate and distinct from the employer's nondelegable duty. *Id*. at 327 ("[W]hat matters is whether [the co-employee]'s negligence in fulfilling [the employer]'s duty to ensure the line was de-energized was reasonably foreseeable to [the employer]. It was. Accordingly, [the co-employee]'s negligence was due to a breach of [the employer]'s nondelegable duty to provide a safe workplace."). Here, the dissenting opinion finds outcome-determinative significance in Edwards' act of lifting the safety guard, but this act is no different than the act of backing up a truck as in *Kelso*, 85 S.W.2d at 529, or the act of driving the forklift as in *Ogletree*, 542 S.W.3d at 328.[10] These acts fell within the employer's nondelegable duty to provide a safe workplace, as does Edwards' act of lifting the safety guard in this case. Because the act of lifting the safety guard fell within the employer's duty to provide a safe

---

[10] The dissenting opinion relies heavily on *Peters* to argue Edwards breached his common law duty to Brock. In *Peters*, this Court found an employee injured in the workplace failed to state a negligence claim against a supervisor co-employee because he did not establish the supervisor's actions in the face of obvious safety concerns went beyond the employer's nondelegable duty to provide a safe workplace. 489 S.W.3d at 798-99. Here, Brock alleges Edwards, a supervisor, ignored obvious and known safety concerns when he lifted the safety guard on the operating machine that injured Brock. Like the plaintiff in *Peters*, Brock has failed to establish Edwards' action went beyond the employer's nondelegable duty to provide a safe workplace. No matter if this Court relies on the holding in *Peters* or *Ogletree*, Brock cannot establish Edwards breached his common law duty separate and distinct from the employer's nondelegable duty to provide a safe workplace.

16

work environment, the duty is nondelegable. Any alleged negligence on the part of Edwards in lifting the safety guard, therefore, cannot form the basis of common law liability.

Rather than applying *Ogletree*, the dissenting opinion concludes Edwards owed an independent duty to Brock despite its overlap with the employer's nondelegable duty to provide a safe workplace. The dissenting opinion's analysis that a co-employee owes an independent duty to keep a safe workplace outside the employer's foreseeable nondelegable duty disregards settled law and would once again muddy the waters with respect to the liability a co-employee may face for causing injuries in the workplace. Because Edwards' conduct fell within the employer's nondelegable duty, Brock failed to make a submissible case of common law negligence, and Dunne was entitled to a directed verdict and JNOV.

## Conclusion

The circuit court erred in overruling Dunne's motions for directed verdict and JNOV because Edwards was immune from civil liability pursuant to section 287.120.1 and Brock failed to make a submissible case of common law negligence. The circuit court's judgment, therefore, is reversed, and, pursuant to Rule 84.14, judgment is entered in favor of Dunne.

_____
W. Brent Powell, Judge

Wilson, C.J., Russell and Fischer, JJ., concur;
Breckenridge, J., dissents in separate opinion filed;
Draper, J., concurs in opinion of Breckenridge,
J.  Ransom, J., not participating.

18



# SUPREME COURT OF MISSOURI
## en banc

DANNY BROCK,                                         )
                                                    )
                        Respondent,                 )
                                                    )
v.                                                  )        No. SC97542
                                                    )
PETER DUNNE, in his Capacity as Defendant           )
Ad Litem for MARK EDWARDS, Deceased,                )
                                                    )
                        Appellant.                  )

DISSENTING OPINION

I respectfully dissent because Danny Brock presented sufficient evidence that

Mark Edwards breached a duty owed independently of the master-servant relationship and

purposefully and dangerously caused or increased the risk of injury when he purposefully

removed the safety guard, knowing the natural and probable consequence of doing so was

to increase the risk of injury. In holding otherwise, the principal opinion ignores evidence

in the light most favorable to Mr. Brock, misinterprets section 287.120.1,[1] and fails to apply

the common law principles governing co-employee liability reaffirmed in *Peters v. Wady*

*Industries, Inc.*, 489 S.W.3d 784, 796 (Mo. banc 2016). Rather than reverse Mr. Brock's

judgment for Mr. Edwards' common law negligence, the principal opinion should find the

---

[1] All references to section 287.120 are to RSMo Supp. 2012, unless otherwise noted.

circuit court did not err in overruling defendant ad litem Peter Dunne's motions for directed verdict and judgment notwithstanding the verdict ("JNOV") and address Mr. Dunne's remaining points on appeal.

*Sufficient Evidence of Breach of a Duty Owed Independently*
*of the Master-Servant Relationship*

As the principal opinion correctly states, section 287.120.1, as amended in 2012, is not the source of any co-employee liability. Rather, the newly enacted provision in section 287.120.1 is a grant of immunity releasing employees from liability for "injury or death for which compensation is recoverable under [chapter 287] . . . except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury." After the 2012 amendment to section 287.120.1, therefore, a plaintiff must still make a submissible case of common law negligence because there is no liability from which to release an employee until a submissible negligence case is made. This Court in *Peters*, 489 S.W.3d at 796, reviewed and reaffirmed the common law principles that for decades have governed liability of an employee who injures another employee by an act of negligence in carrying out the duties of employment. Accordingly, the analysis of Mr. Dunne's claims of error should begin with whether Mr. Brock made a submissible case of common law negligence as articulated in *Peters*. *Id.* at 784.

To make a submissible case of common law negligence, a "plaintiff must establish that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *Id.* at 793 (internal quotation omitted). Accordingly, the initial question in determining

2

whether Mr. Brock made a submissible case of common law negligence is whether Mr. Edwards owed Mr. Brock a duty.

Under the principles reaffirmed in *Peters* and enduring Missouri precedent, "[e]very person has the duty to exercise ordinary care to so conduct him[ or her]self as not to injure others, and is liable to one who is harmed by a breach of that duty." *Tharp v. Monsees*, 327 S.W.2d 889, 893 (Mo. banc 1959) (quoting *Hamilton v. Ross*, 304 S.W.2d 812, 814 (Mo. 1957)). That duty and liability for its breach persist although a person acts as agent within the scope of an agency relationship. *See State ex rel. Doe Run Res. Corp. v. Neill*, 128 S.W.3d 502, 505 (Mo. banc 2004); *Logsdon v. Duncan*, 293 S.W.2d 944, 949 (Mo. 1956). "[T]he liability of the servant or agent results from the breach of a duty owed to the third party under the law, which makes him liable *without regard to whether he is the servant or agent of another or not*." *Peters*, 489 S.W.3d at 794 (internal alteration and quotation omitted) (emphasis added). Likewise, the fact the plaintiff happens to be another agent of the same principal as the alleged tortfeasor does not change the agent's liability. Agents are liable to other agents of the same principal in the same way they are to third persons. Restatement (Second) of Agency, § 359 (1958).

Employees are agents. *Jefferson ex rel. Jefferson v. Mo. Baptist Med. Ctr.*, 447 S.W.3d 701, 712 (Mo. App. 2014). As such, employees remain liable to third persons, including other employees,[2] for breach of their duty to exercise ordinary care to conduct

---

[2] A co-employee is considered a third person under the workers' compensation law and amenable to an action at common law. *Sylcox v. Nat'l Lead Co.*, 38 S.W.2d 497, 502 (Mo. App. 1931).

3

themselves as not to injure others. In the fact-specific application of that duty to the employment context, employees owe each other a duty to exercise such care in the performance of their work as persons of ordinary prudence use in like circumstances.[3]

---

[3] This duty owed between employees was widely recognized in prior cases. *See, e.g.*, *Clark v. Floyd*, 514 So. 2d 1309, 1318 (Ala. 1987) (recognizing the general rule that "as between themselves, servants mutually owe each other the duty of exercising ordinary care in the performance of their service" and may be held liable for breach of that duty (alteration omitted)); *Miner v. Super. Ct. of Fresno Cnty.*, 106 Cal. Rptr. 416, 418 (Ct. App. 1973) (noting fellow employees owed each other a common law duty to exercise ordinary care in the transaction of their work and they were liable to each other for breach of that duty); *Roda v. Williams*, 407 P.2d 471, 508 (Kan. 1965) ("At common law, fellow employees mutually owed to each other the duty of exercising ordinary care in the performance of their duties and each was liable for a failure in that respect which resulted in injury to a fellow employee."); *Dawald v. Rocket Transfer Co.*, 109 N.W.2d 345, 349 (Minn. 1961) ("Where . . . persons are engaged in the same work under conditions where the safety of one depends upon the care, skill, and prudence of another, there is a duty of each to the other to exercise such skill and care as is ordinarily employed by prudent men under similar circumstances."); *Logsdon*, 293 S.W.2d at 949; *Frantz v. McBee Co.*, 77 So. 2d 796, 798 (Fla. 1955) ("There can be no doubt that, at common law, servants mutually owed to each other the duty of exercising ordinary care in the performance of their service and were liable for a failure in that respect which resulted in injury to a fellow servant."); *Martin v. Yazoo & Miss. R.R. Co.*, 181 So. 571, 580 (La. Ct. App. 1938) (finding fellow employees "owed to each other the duty to exercise ordinary care in discharging the duties of their common employer"); *Greer v. Pierce*, 147 So. 303, 304 (Miss. 1933) ("One fellow servant is liable to another fellow servant for his negligence proximately causing the injury of the latter. It is a common-law obligation co-existent with the law of negligence."); *Fears v. Noel*, 145 A. 664, 665 (N.H. 1929) (recognizing the "well-settled rule" that co-employees owed each other a duty to exercise ordinary care in the transaction of their work); *Zimmer v. Casey*, 146 A. 130, 131 (Pa. 1929) (holding co-employees owe each other "the common-law duty of due care in the discharge of their duties"); *Tex. Pipe Line Co. v. Johnson*, 275 S.W. 329, 331 (Ark. 1925) (stating men working together have "a right to expect that [their] fellow workmen [will] exercise due care in the premises for the safety of others"); *Hare v. McIntire*, 19 A. 453, 455 (Me. 1890) (stating it would be a "monstrous conclusion" to hold "one servant owes no duty of exercising care to avoid injuring his fellow-servants"); *Brodeur v. Valley Falls Co.*, 17 A. 54, 55 (R.I. 1889) ("Negligence, therefore, among workmen, is a breach of the duty which each owes to the others, and not a breach of the master's duty[.]"); *Rogers v. Overton*, 87 Ind. 410, 411-12 (1882) (noting the general rule is that an employee may maintain an action against his fellow servant for injuries received in the master's service); *Osborne v. Morgan*, 130 Mass. 102, 106 (1880) (holding an

*Logsdon*, 293 S.W.2d at 949.  Because the duty to exercise ordinary care in performing the work is merely a fact-specific application of every person's duty to exercise ordinary care not to injure others, the duty exists independently of the master-servant relationship even though it occurs during employment.  *See State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 180 (Mo. App. 1982), *abrogated in part by Peters*, 489 S.W.3d at 797.

Unlike a co-employee's liability under the common law – which, before the 2012 amendment to section 287.120.1, was the same as to other employees as to third persons – an employer historically has not been liable to its employees in the same way it is liable to third persons.  To third persons, an employer is liable for its own negligent acts and vicariously liable under the doctrine of *respondeat superior* for its employees' negligent acts committed within the course and scope of employment.  *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 765 (Mo. banc 2006).  As to employees, employers were not vicariously liable for the negligent acts of co-employees under the common law fellow-servant rule.  *Peters*, 489 S.W.3d at 791.  Consequently, an employer was liable to its employees only for its own negligence.  *See Kelso v. W.A. Ross Constr. Co.*, 85 S.W.2d 527, 537 (Mo. 1935).  In other words, an employer was liable, under the common law, to its employees for breach of its own duties but not for the negligence of its co-employees.

The employer's duty to its employees is "to exercise reasonable care, commensurate with the nature of the business, to protect [its] servant from the hazards incident to it."  *Curtis v. McNair*, 73 S.W. 167, 168 (Mo. 1903).  While employers may personally

---

employee is responsible for an injury caused by negligence to a co-employee); *see also* 30 C.J.S. *Employer-Employee* §§ 254, 255;  2A American Law of Torts § 9:91.

5

discharge their duty to protect employees from workplace hazards, "[t]he duties which the master owes a servant may in many particulars be delegated to subordinates, and the wide extent of modern business enterprises often necessitates so doing[.]" *Koerner v. St. Louis Car Co.*, 107 S.W. 481, 486 (Mo. 1907). Even though an employer chooses to discharge its duty to protect its employees from workplace hazards by assigning the responsibility to an employee, the employer remains *solely* liable for breach of its duties. *Peters*, 489 S.W.3d at 795. In that sense, the employer's duty is nondelegable. *Id.*

After the enactment of the workmen's compensation act in 1925, employees could no longer bring common law suits against an employer for breach of its duty to protect from workplace hazards. 1925 Mo. Laws page 377, § 3 (now codified at section 287.120.1). The 1925 act granted employers immunity from common law liability to their employees in exchange for furnishing compensation, without regard to fault, for employees' injuries within the course and scope of employment. *Id.* Thereafter, injured employees could assert negligence actions only against third persons, including co-employees. Because the duty to exercise reasonable care to protect workers from workplace hazards is solely the employer's duty and actions against employers based on breach of that duty are barred by section 287.120.1, no action can be brought against a co-employee for failing to protect other employees from workplace hazards. *Peters*, 489 S.W.3d at 795. A co-employee is liable only for breach of his or her own duty of ordinary care in performing the work. *Id.*

Because an employee's liability is limited to breach of his or her own duty of ordinary care, it is necessary to determine what employee duty, if any, was alleged to be

6

breached when another worker was injured. All of an employee's work responsibilities may be related to performance of the employer's nondelegable duty; alternatively, an employee may not be charged with any part of the employer's duty to protect its employees from workplace hazards. Often, however, an employee is charged with performance of the employer's duty to protect from workplace hazards and also employed to engage in the same or similar work as other employees to whom the employer's nondelegable duty is owed. *Parker v. Nelson Grain & Milling Co.*, 48 S.W.2d 906, 908 (Mo. 1932). The dual capacity doctrine recognizes this circumstance, as in this case, when an employee functions in both capacities in his or her employment. *See, e.g.*, *Boston v. Kroger Grocery & Baking Co.*, 7 S.W.2d 1006, 1009 (Mo. 1928); *Radtke v. St. Louis Basket & Box Co.*, 129 S.W. 508, 514 (Mo. 1910).

When an employee is assigned to function in both capacities, the dual capacity doctrine provides that the nature of an employee's acts determines the capacity in which the employee is functioning. *Radtke*, 129 S.W. at 514. To the extent an employee is performing the employer's nondelegable duties with which the employee has been assigned, an employee acts in the capacity of a vice principal in relation to other employees. *See Wall v. Philip A. Rohan Boat, Boiler & Tank Co.*, 62 S.W.2d 764, 768-69 (Mo. 1933). When an employee is not acting to perform the employer's nondelegable duties – either because the employer has not assigned any of its duties to the employee or because the employee is merely doing the productive work of the business – the employee acts in the

7

capacity of a co-employee[4] in relation to other employees.  *See Logsdon*, 293 S.W.2d at 949.

In turn, the capacity in which an employee negligently acts determines which duty is breached.  It is when an employee acting in a dual capacity "doffs the cap of officer or supervisor and dons the cap of a coemployee that he [or she] may be personally liable for injuries caused."  *Craft v. Scaman*, 715 S.W.2d 531, 537 (Mo. App. 1986) (internal quotation omitted) (cited favorably by *Tauchert v. Boatmen's Nat'l Bank of St. Louis*, 849 S.W.2d 573, 574 (Mo. banc 1993)).  When an employee who functions in a dual capacity dons the cap of a co-employee, he or she owes to other employees the duty to exercise ordinary care in carrying out the details of the work. *Peters*, 489 S.W.3d at 796; *Logsdon*, 293 S.W.2d at 949.  Accordingly, an employee who functions in a dual capacity is liable to other employees only for negligence in his or her capacity as a co-employee.

By virtue of multiple negligent acts, however, an employee may act negligently in both capacities.  *Rigsby v. Oil Well Supply Co.*, 91 S.W. 460, 465-66 (Mo. App. 1905); *see Kautz v. St. Louis Refrigerator Car Co.*, 219 S.W. 719, 726 (Mo. App. 1920) (recognizing an employee's negligence as a fellow servant may "combine[] with negligence on his part in the capacity of a vice-principal").  When acts committed in both capacities concur to

---

[4] Prior cases use various terms to describe this capacity, including colaborer, co-servant, and fellow servant. *See, e.g.*, *Parker*, 48 S.W.2d at 908 (using "fellow servant"); *Fogarty v. St. Louis Transfer Co.*, 79 S.W. 664, 668-69 (Mo. 1904) (using "colaborer," "fellow servant," and "co-servant").  Whichever term is used, the idea conveyed is that the co-employee is acting not as a vice principal performing the employer's duties to provide its employees with a safe workplace but rather as another employee of the same employer engaged in doing the same work as the plaintiff. *See, e.g.*, *Boston*, 7 S.W.2d at 1008 ("They were working for a common master to accomplish a common purpose.").

cause the plaintiff's injury, the employer is liable under the common law for the employee's negligence as a vice principal, and the employee is liable for his or her negligence as a co-employee. *Rigsby*, 91 S.W. at 465-66. Therefore, regardless of whether the injury may have been caused, in part, by a co-employee's negligence in failing to provide a safe workplace, agency and tort law would still permit a co-employee to be held liable for breach of the duty to "exercise such care in the performance of their work as persons of ordinary prudence use in like circumstances."

The principal opinion abrogates the employee's duty to exercise ordinary care in performance of the employer's work by applying the analysis articulated in *Conner v. Ogletree*, 542 S.W.3d 315, 324 (Mo. banc 2018), to conclude Mr. Brock failed to make a submissible case of common law negligence because he failed to present sufficient evidence that Mr. Edwards was negligent in performing JMC's nondelegable duties in a way that was not reasonably foreseeable to JMC. *Ogletree* should not be applied, however, because it is not controlling precedent. It expressly limited its ruling to injuries occurring between 2005 and 2012. *Id.* at 324, 328. Mr. Brock's injury occurred in 2013, so it occurred outside the period to which *Ogletree* applies.

Additionally, Ogletree was wrongly decided. Specifically, *Ogletree* ignored agency principles governing the employer-employee relationship and the precedent it cited recognizing employees are responsible for performing the employer's nondelegable duty only if charged with its performance. *Ogletree* cited *Dayharsh v. Hannibal & St. J.R. Co.*, 15 S.W. 554, 555 (Mo. 1891), which recognized employers often must delegate their duties to subordinates, and *Zellars v. Missouri Water & Light Co.*, 92 Mo. App. 107, 124 (1902),

9

which stated corporations "necessarily must entrust this duty into the hands of servants." *Ogletree* also repeatedly cited *Peters* for the proposition that an employer breaches its nondelegable duties when it "charge[s] an employee with the responsibility to provide a reasonably safe work environment but the employee [does] not so provide." *Ogletree*, 542 S.W.3d at 321, 322, 324, 327. But *Ogletree* then holds a co-employee's negligence in performing the details of the work is a breach of the *employer's* duty to provide a safe manner of work. *Id*. That conclusion can be reached only by ignoring the precedent and principles discussed *supra* governing the principal-agent relationship.

Rather, *Ogletree* created the fiction that all employees hired to do the productive work of the employer are charged with the employer's duty to provide its employees with a safe workplace. That fiction is contrary to the realities of employment and the common law. Many, if not most, employees have no responsibility to carry out their employer's duty to protect its employees from workplace hazards. These employees are hired to do the productive work of the business – doing the same or similar work as other employees for the common employer – not to discharge the employer's duties to its employees.

More importantly, *Ogletree*'s holding identifying a foreseeable failure to exercise ordinary care in carrying out the details of the work as breach of the employer's duty directly conflicts with the long line of prior cases distinguishing an employer's duty to provide a safe manner of work from an employee's duty in carrying out the details of work:

> [W]hen an employee's injuries result from the tools furnished, the place of work, or the *manner in which the work was being done*, the injuries are attributable to a breach of the employer's nondelegable duty to provide a safe workplace. When, however, the employee's injuries result from a co-employee's negligence in *carrying out the details of the work*, the injuries

10

> are attributable to the co-employee's breach of a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace.

*Peters*, 489 S.W.3d at 796 (emphasis added).

Historically, employees are liable for breach of a duty owed independently of the master-servant relationship, including a duty to use ordinary care. Employers, however, have immunity under the workers' compensation law from common law negligence suits based on the breach of its nondelegable duties. *See* section 287.120.1. *Ogletree* held an *employer's* duty to provide a safe manner of work encompasses an employee's duty to use ordinary care in performing the details of the work to the extent the employee's acts are reasonably foreseeable to the employer. 542 S.W.3d at 327. Incorporating an employee's duty to exercise ordinary care into an employer's duty to protect employees against reasonably foreseeable hazards precludes an injured employee from recovering under the common law from a negligent co-employee because a foreseeable failure to exercise ordinary care, under *Ogletree*, is not a breach of the co-employee's separate duty.

Instead of recognizing a co-employee can be held liable for breaching the duty to exercise ordinary care in carrying out the details of the work, *Ogletree* created new criteria governing co-employee liability for all workplace negligence. *Ogletree* did so *sua sponte* without briefing or argument and *sub silentio* overruled a multitude of Missouri cases. In doing so, *Ogletree* – and the principal opinion in this case – articulates no legal basis or purpose for *Ogletree*'s substantive holdings. Under *Ogletree*'s new criteria, an injured employee can recover only when a co-employee breaches the employer's nondelegable duty and the breach is not reasonably foreseeable to the employer. *Id.* at 322. *Ogletree* attempts to avoid the obvious conflict with the indisputable law that only an employer is

11

liable for breach of its duty to protect from workplace hazards by labeling a co-employee's unforeseeable negligence in discharging the employer's nondelegable duty as a breach of the co-employee's separate and distinct duty.  Limiting the liability of employees for breach of the duty to exercise ordinary care in the performance of their work to only negligent acts that are not reasonably foreseeable to the employer eliminates recovery in the majority of circumstances allowing recovery at common law.

*Ogletree*'s new criteria for co-employee liability are also unprecedented because they do not correctly apply principles of foreseeability.  All liability in negligence is predicated on the existence of risks that are reasonably foreseeable and sufficiently serious that ordinary persons would take precautions to avoid them.  *See Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 156 (Mo. banc 2000).  *Ogletree* correctly recognized employers had no common law duty to protect employees against hazards that were not reasonably foreseeable.  *See Ogletree*, 542 S.W.3d at 322-23 (citing *Kelso*, 85 S.W.2d at 536-37; *Cain*, 49 S.W.2d at 94).  But *Ogletree* then misapplied the requirement of foreseeability when it held the lack of foreseeability to an *employer* of a risk of harm is the test for when a *co-employee* is liable.  In no other area of law is party A's liability determined by whether party A's negligent act is reasonably foreseeable to party B.  In any other context – and in this context, historically – a person can be held liable for failing to exercise ordinary care to avoid a harm reasonably foreseeable *to that person*.  *See Tharp*, 327 S.W.2d at 893-94.[5]

---

[5] One of *Ogletree*'s companion cases, *Fogerty v. Armstrong*, 541 S.W.3d 544, 548 (Mo. banc 2018), also misapplied the common law when it held an employee could not be liable

12

The effect of *Ogletree*'s new criteria for co-employee liability – that the co-employee must not only be negligent but negligent in a way that is not reasonably foreseeable to the employer – is that a co-employee is liable only if the employer would not have been liable under the common law. *Ogletree*, 542 S.W.3d at 324. In other words, *Ogletree* holds the liabilities of the employer and co-employee for work-related negligence are mutually exclusive. *Id.* This has no basis in the law, and it directly conflicts with the rules discussed above governing an agent's tort liability for injury to a third person. Ultimately, *Ogletree*'s holding eliminates the previously recognized cause of action for an employee's workplace negligence and precludes co-employee liability for all negligence that is reasonably foreseeable to the employer, i.e., the majority of workplace negligence.[6]

---

for negligently dropping the forks of a front loader on another employee. *Ogletree*'s other companion case, *McComb v. Norfus*, 541 S.W.3d 550, 556 (Mo. banc 2018), correctly applied the common law to hold co-employees were not liable for deciding, in their supervisory capacities, that the plaintiff continue on his route in the face of severe weather.

[6] *Peters* recognized "employees are liable at common law to third persons, including other co-employees, for breaching a legal duty owed independently of any master-servant relationship." 489 S.W.3d at 794-95. Despite quoting this principle three times, *Ogletree* elsewhere reworded the language of the quote to substantially change the substance of the principle. *Ogletree*, 542 S.W.3d at 321, 324 n.4, 328. Reworded, the principle became that an injured employee can sue a co-employee at common law for only "breach of a duty *unrelated to employment* or an unforeseeable breach of the employer's duty to provide a safe workplace." 542 S.W.3d at 322 (emphasis added). This alteration reflects the great impact of *Ogletree*'s alteration on the test for co-employee liability. Examination of the application of *Ogletree*'s holding to its facts shows the drastic reduction of an employee's liability. In *Ogletree*, it was assumed the defendant employee was negligent when he used an improper tool to attempt to deenergize a power line and failed to confirm the power line was deenergized. *Id.* at 327. Despite recognizing the employee's negligence, *Ogletree* affirmed the circuit court's grant of summary judgment against the injured plaintiff because the Court found the negligence was reasonably foreseeable to the employer and a co-employee is liable only for a breach of the employer's duty to provide a safe workplace that was not reasonably foreseeable. *Id.* at 328. Prior to *Ogletree*'s alteration of common law liability, the defendant employee could have been held liable for breach of his failure to exercise ordinary care.

The principal opinion declines to correct course or confront any of *Ogletree*'s substantive errors because it claims *Ogletree* is "settled law" and applying the black-letter agency principles articulated in *Peters* "would once again muddy the waters." But it ignores that *Peters* settled the law when it corrected the misapplication of the law in *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 621 (Mo. banc 2002), *overruled by McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 479 (Mo. banc 2009), and its progeny. *See Peters*, 489 S.W.3d at 798. And it ignores the confusion resulting from *Ogletree*'s newly created criteria for co-employee liability that is further compounded by *Ogletree*'s failure to confess its significant alteration of an injured employee's common law right to recover against a negligent co-employee or provide any justification for so doing.

*Ogletree*'s failure to acknowledge its conflict with precedent is contrary to this Court's aversion to overruling cases *sub silentio*. *State v. Honeycutt*, 421 S.W.3d 410, 422 (Mo. banc 2013). "If the majority chooses to overrule a case it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio*." *Id.* (alterations and quotation omitted). Failing to state when precedent and established principles of law are no longer to be followed creates uncertainty and confusion in the law and all the more so when a decision overruling precedent *sub silentio* is extended beyond the period to which it expressly limited its holdings. Ignoring the confusion in the law resulting from *Ogletree*, the principal opinion expresses the importance of settling the law but makes no attempt to demonstrate the law is settled correctly. The application of *Ogletree* is not compelled because *Ogletree* limited its holdings to injuries occurring

14

between 2005 and 2012, *id.* at 324, 328, and, as it was incorrectly decided, *Ogletree* should be rejected in favor of the prior law.

As the prior law makes clear, the liability of a co-employee "results from the breach of a duty owed to the third party under the law, which makes him [or her] liable without regard to whether he [or she] is the servant or agent of another or not." *Peters*, 489 S.W.3d at 794. One such duty is the duty to exercise ordinary care in doing the work to the extent it does not involve the performance of the employer's nondelegable duties. *Id.* at 796; *see also Logsdon*, 293 S.W.2d at 949. Therefore, under *Peters*, to make a submissible case of common law negligence, Mr. Brock should be required to show only that Mr. Edwards acted in his capacity as a co-employee and failed to exercise ordinary care.

In determining whether Mr. Brock met that burden, the standard of review mandates the Court view the evidence in the light most favorable to the jury's verdict, give the plaintiff the benefit of all reasonable inferences, and disregard evidence and inferences contrary to the verdict. *Robinson v. Langenbach*, 599 S.W.3d 167, 176 (Mo. banc 2020). "The jury's verdict will be reversed only if there is a complete absence of probative facts to support the jury's conclusion." *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 482 (Mo. banc 2021) (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)).

Accordingly, the sufficiency of the evidence should be reviewed to determine if there was a complete absence of probative facts to support the common law claim recognized in *Peters*. Mr. Brock presented evidence that Mr. Edwards was an employee who worked on the laminating line and also supervised the employees assigned to the

15

laminating line. As such, Mr. Edwards was an employee who functioned in a dual capacity in relation to the employees on the laminating line. Mr. Brock alleged Mr. Edwards was negligent by virtue of multiple acts. Therefore, the negligent acts should be examined to determine whether they were the acts of a vice principal or, rather, the acts of a co-employee and, consequently, whether they breached JMC's duty to protect employees from workplace hazards or, rather, Mr. Edwards' personal duty to exercise ordinary care.

Mr. Brock's common law negligence claim is based, in part, on Mr. Edwards ordering him to clean the rollers using a certain method and Mr. Edwards failing to warn of reasonably foreseeable hazards. The method Mr. Edwards supplied – squeezing a wet rag over the rollers while scraping glue away with a brush – proved unsafe, and Mr. Brock was injured as a result. "The duty to provide safe appliances, tools, and equipment for work" and "to see that instrumentalities of the workplace are used safely" is the employer's. *Peters*, 489 S.W.3d at 795. Therefore, Mr. Edwards' negligence in providing an unsafe method of cleaning the rollers and failing to warn Mr. Brock of reasonably foreseeable workplace hazards are acts committed in his capacity as a vice principal that breach only JMC's duties. If that was all his evidence showed, Mr. Brock could not make a submissible case of common law negligence because he would not have shown Mr. Edwards breached a separate duty owed to Mr. Brock.

Mr. Brock's claim, however, is based also on Mr. Edwards' negligence in personally engaging in the work of cleaning the rollers and lifting the safety guard while Mr. Brock worked near the pinch point. When Mr. Brock was injured, Mr. Edwards, Mr. Brock, and the two other employees on the laminating line were working together to

16

feed sheets of particle board through the machine to apply glue to the sheets. In the course of feeding particle boards through the machine and carrying them to a set of rollers where laminate could be applied, Mr. Edwards saw the rollers needed to be cleaned. Acting as a supervisor, he told Mr. Brock to clean them by a certain method, but then acting as a co-employee, he worked together with Mr. Brock to clean the rollers by holding the safety guard back from the bottom rollers while Mr. Brock applied water and held a brush to the rollers.

When an employee who functions in a dual capacity "select[s] the place and the method of doing the work, his act [i]s that of the master," but when the employee works with the plaintiff in "doing the same or similar work for the common master," the act is that of a co-employee. *Radtke*, 129 S.W. at 515. Mr. Edwards doffed his supervisor's cap and donned his co-employee's cap to clean the rollers as part of running sheets of particle board through the machine. While working as a co-employee with Mr. Brock to clean glue off the rollers, Mr. Edwards owed Mr. Brock a duty to exercise ordinary care not to injure him.

Having determined from the nature of Mr. Edwards' actions that he was working in his capacity as a co-employee and, therefore, owed Mr. Brock an independent duty to exercise ordinary care, the Court must next consider whether there was evidence presented from which the jury could find that Mr. Edwards' conduct was not the exercise of due care.[7]

---

[7] The standard of care that applies under the circumstances is a question of law for the courts, but whether a person's conduct measures up to that standard of care is a question of fact for the jury. *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993).

Mr. Brock presented evidence Mr. Edwards knew JMC's safety rules prohibited him from removing the safety guard while the machine was in operation. There was also evidence Mr. Edwards knew JMC required him to turn the machine off before removing the safety guard; to comply with its lock out and tag out procedures, which effectively disable the machine, while it was removed; and to replace the safety guard before restarting the machine. Additionally, in his deposition, Mr. Edwards expressly stated he was aware of safety decals on the machine warning of the danger created by the machine's pinch point. In light of Mr. Edwards' knowledge of these multiple warnings and JMC's specific procedures meant to ensure the machine was not operational when the safety guard was removed, a reasonable trier of fact could find a reasonable person in Mr. Edwards' shoes would anticipate his conduct – removing the safety guard covering the pinch point while another employee worked in close proximity to the pinch point – would create a probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it. *See Lopez*, 26 S.W.3d at 156.

Mr. Brock presented sufficient evidence to show Mr. Edwards breached his duty owed independently of the master-servant relationship to exercise ordinary care. The principal opinion requires something more than negligence, however, and requires that Mr. Edwards' negligent act was not reasonably foreseeable to JMC. In requiring more than negligence, the principal opinion demonstrates the analysis in *Ogletree* surreptitiously exchanged one "something more" test, *see Badami*, 630 S.W.2d at 180, for another.

18

*Sufficient Evidence Mr. Edwards Purposefully Increased the Risk of Injury*

Because Mr. Brock made a submissible negligence case against Mr. Edwards, section 287.120.1 becomes relevant. As the principal opinion correctly holds, immunity under section 287.120.1 is an affirmative defense, Mr. Dunne had the initial burden to prove the affirmative defense applied, and, when he did so, the burden shifted to Mr. Brock to make a submissible case that Mr. Edwards' conduct fell within the exception to immunity.

Section 287.120.1 excepts from workers' compensation immunity employees who "engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury." In determining the meaning of this provision, the Court's primary goal is to "effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language." *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013). Ascribing to section 287.120.1 its plain and ordinary meaning, Mr. Brock had to present sufficient evidence that Mr. Edwards, at a minimum, acted negligently; the act was affirmative; and the act purposefully and dangerously caused the risk of injury or increased the risk of injury.

As discussed previously, Mr. Brock made a submissible case of common law negligence. He presented sufficient evidence that Mr. Edwards committed a negligent act when he removed the safety guard, and that act was affirmative. It is also indisputable that, when Mr. Edwards removed the safety guard while the machine was in operation, he dangerously increased the risk of injury. Accordingly, the disputed issue is whether, when Mr. Edwards dangerously increased the risk of injury, he did so purposefully.

19

In this regard, "intent need not be proved by direct testimony[.]" *City of Kan. City v. Thorpe*, 499 S.W.2d 454, 459 (Mo. 1973). "Only rarely if ever is there direct proof of one's state of mind." *State v. Feger*, 340 S.W.2d 716, 725 (Mo. 1960). Instead, intent is generally shown through facts and circumstances surrounding the act, and it is presumed a person intends the natural and probable consequences of his or her voluntary acts. *Thorpe*, 499 S.W.2d at 459; *see Meiners v. State*, 540 S.W.3d 832, 841 (Mo. banc 2018).

Mr. Brock presented evidence of the facts and circumstances surrounding Mr. Edwards' removal of the safety guard. The evidence was Mr. Edwards knew he should not remove the safety guard from the running machine because the manufacturer explicitly warned against doing so. He knew JMC's safety rules also prohibited the removal of the safety guard while the machine was running, and JMC's lockout and tagout rules applied when he removed the safety guard while Mr. Brock was "required to place himself in . . . potentially hazardous areas of equipment movement." Mr. Edwards knew JMC's lockout and tagout procedures required him to turn the machine off; isolate the machine from electrical power at the machine's electrical panel; place a combination lock on the electrical panel to prevent other employees from restoring power to the machine; advise affected employees the machine had been "locked out"; and attempt to start the machine to ensure it was successfully isolated from electrical power. Additionally, he knew that, before turning the machine back on, JMC's procedures required him to ensure other employees and equipment were clear of the machine; replace all safety guards; and warn other employees he intended to restart the machine. Mr. Edwards testified he had followed the lockout and tagout procedure in the past, lockout and tagout procedures are meant "[f]or

20

the safety of everyone," and a failure to follow the procedures could result in injury. Mr. Edwards further admitted he knew that, if safety rules are not followed, employees can get injured, i.e., the risk of injury increases.

Notwithstanding his knowledge of these safety rules and warnings and the fact an increase in the risk of injury would result from a failure to follow proper cleaning procedures, Mr. Edwards intentionally removed the safety guard designed to prevent pinch point injuries. And he did so while the machine was running and Mr. Brock dangled a rag directly over the pinch point to clean the rollers. From this evidence, a reasonable juror could infer Mr. Edwards knew an increase in the risk of injury was the natural and probable consequence of his act, which is evidence he acted with the purpose to cause the risk of injury or increase the risk of injury. *Thorpe*, 499 S.W.2d at 459. There was sufficient evidence, therefore, from which a reasonable juror could find Mr. Edwards purposefully and dangerously increased the risk of injury.

The principal opinion reaches a contrary conclusion because it ignores evidence favorable to Mr. Brock and misinterprets and misapplies section 287.120.1 to require Mr. Brock to show Mr. Edwards acted with the "conscious object" of increasing the risk of injury to Mr. Brock or others. It states section 287.120.1 "requires Edwards to act with the conscious object of increasing the risk of injury to Brock or someone else"; states the exception to immunity contemplates "deliberate and deviant actions of a co-worker who s[eeks] and desire[s] to cause or increase the risk of injury to a co-employee"; and concludes Mr. Brock failed to show Mr. Edwards "intended to cause or increase the risk of any injury to Brock or others." The words "conscious object," however, are not to be found

21

anywhere in section 287.120.1.[8]  Moreover,  to the extent the principal opinion suggests an employee must desire to increase not only the risk of injury, generally, but also to increase the risk that a particular person or group be injured, its interpretation extends well beyond the plain and ordinary meaning of any words found in section 287.120.1.

The principal opinion also states that, "if a co-employee purposefully and intentionally engages in conduct that causes or increases the risk of injury, but does so with the purpose of increasing productivity or output, then the co-employee has not acted with the purpose of causing or increasing risk of injury within the meaning of [section 287.120.1]."  In effect, the principal opinion holds the purpose to increase the risk of injury must be an employee's sole purpose.  This defies the text of section 287.120.1 and common sense.  There is no language in the statute to support an interpretation that the legislature intended to release from liability an employee who engages in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury so long as the employee did so wanting to increase productivity.  The fact an employee is motivated, in part, by some other purpose does not preclude a finding that the act was also done with the purpose to cause or increase the risk of injury.  Therefore, it is irrelevant whether

---

[8] Indeed, the principal opinion borrows the phrase "conscious object" primarily from a statutory definition of the word "purposely" – note, not "purposefully" – in the criminal code. *See State v. Michaud*, 600 S.W.3d 757, 760 (Mo. banc 2019) (applying the definition of "purposely" provided in section 562.016.2); *State v. McNabb*, 621 S.W.3d 658, 661 (Mo. App. 2021) (same); *State v. Keeler*, 856 S.W.2d 928, 931 (Mo. App. 1993) (same). That definition is inappropriate here.  Had the legislature intended to borrow the definition of  "purposely" from the criminal code to govern section 287.120.1, it would be expected to have used the term "purposely" rather than "purposefully," which was available to it when it amended section 287.120.1 in 2012.

Mr. Edwards' affirmative negligent act of removing the safety guard may have been motivated, in part, by any other purpose.

Additionally, under the standard of review, the Court must view the evidence in the light most favorable to Mr. Brock and disregard evidence contrary to the verdict. *Robinson*, 599 S.W.3d at 176. As a result, the Court cannot consider any evidence on which the principal opinion could rely to suggest Mr. Edwards acted with a purpose other than to increase the risk of injury when he lifted the safety guard. Again, the Court's role in reviewing the circuit court's ruling on Mr. Dunne's motions for a directed verdict and JNOV is to determine only whether there is a complete absence of probative fact to support Mr. Brock's claim. *Rhoden*, 621 S.W.3d at 482.

Mr. Brock presented sufficient evidence to allow a trier of fact to draw the reasonable inference that Mr. Edwards knew the natural and probable consequence of removing the machine's safety guard was to increase the risk of injury, which is to say the jury could have found Mr. Edwards purposefully increased the risk of injury. The evidence may support other inferences, but when the evidence permits different reasonable inferences, "it is for the triers of the facts to determine which inference shall be drawn and we may not cast aside their inference for another of our own choice." *Thorpe*, 499 S.W.2d at 459. This Court should hold the circuit court did not err in overruling Mr. Dunne's motions for a directed verdict and JNOV.

### Conclusion

I dissent from the extension of the unprecedented holding and analysis in *Ogletree* to cases after 2012 and from the principal opinion's holding that Mr. Brock failed to present

23

sufficient evidence Mr. Edwards purposefully and dangerously caused or increased the risk of injury. Mr. Brock presented sufficient evidence that Mr. Edwards breached a duty owed independently of the master-servant relationship and purposefully and dangerously increased the risk of injury. For these reasons, the Court should find the circuit court did not err in overruling Mr. Dunne's motions for directed verdict and JNOV and address Mr. Dunne's remaining points on appeal.

_____

PATRICIA BRECKENRIDGE, JUDGE